**Milton McCRAY, Appellant,**

v.

**Robert BURRELL, Appellee.**

**Milton McCRAY, Appellant,**

v.

**Sergeant B. D. SMITH (Badge No. 153) Maryland Penitentiary, Appellee.**

**Nos. 77–2267, 77–2268.**

United States Court of Appeals,
Fourth Circuit.

Argued Feb. 5, 1980.

Decided June 4, 1980.

Richard G. Fishman, Keystone Legal Services, Inc., Baltimore, Md. (Richard L. North, Legal Aid Bureau, Inc., Baltimore, Md., on brief), for appellant.

Donald R. Stutman, Asst. Atty. Gen., Baltimore, Md. (Stephen H. Sachs, Atty. Gen., Baltimore, Md., on brief), for appellee.

Before HAYNSWORTH, Chief Judge, and WINTER and BUTZNER, Circuit Judges.

HAYNSWORTH, Chief Judge:

In these § 1983 actions, McCray, a prisoner, contends that he was twice subjected to cruel and unusual punishment when on two separate occasions he was placed in solitary confinement without clothing or articles of personal hygiene. The details of McCray's treatment are fully set forth in a previous opinion by this court, *McCray v. Burrell*, 516 F.2d 357 (4th Cir. 1974) (*en banc*) (*McCray I*), and in a published opinion by the district court, *McCray v. Burrell*, 367 F.Supp. 1191 (D.Md.1973). The defendants are Sergeant Smith, a prison guard, and Captain Burrell, a duty captain in charge of guards.

In *McCray I*, this court held that McCray's Eighth Amendment rights had been violated on both occasions of isolated confinement. The cases were remanded to the district court, however, to determine whether the defendants were entitled to a qualified official immunity from an assessment of damages. On remand, an evidentiary hearing was held, after which the district court concluded that Smith and Burrell had both established good faith defenses to these constitutional violations. The sole issue on this appeal is the propriety of that ruling.

I.

On November 20, 1971, McCray was transferred by Sergeant Smith from a regular cell to an isolation cell. The initial purpose of the transfer was to put an end to a substantial vocal disturbance which McCray had instigated. On the way to the isolation area, McCray's behavior led Smith to conclude that McCray had the potential of inflicting serious bodily harm upon himself. As a precaution, Smith placed McCray in the isolation cell stripped of all clothing and without items of personal hygiene. Smith testified at the initial trial that he was concerned that McCray might hang himself.

Smith did not notify a psychiatrist or psychologist until the next morning, some twenty hours later. He did send such a notice then, being prompted by McCray's apparent self-abuse in soiling himself. The record does not indicate whether a psychologist ever saw McCray, but it does appear that McCray was released from the isolation confinement on November 22 when he appeared to be "all right."

In *McCray I* we held that the conditions of McCray's confinement in isolation were so severe as to border upon a per se violation of the proscription against cruel and unusual punishment. They could be justified only if they were reasonably believed necessary for the protection of the prisoner, and if a psychologist or psychiatrist were immediately notified. We said:

What is clear, however, is that if McCray's mental condition was reasonably believed to be so suspect as to justify the conditions we have described, then it was such as to warrant, if not the actual ministrations of professional personnel, an immediate effort to gain him prompt medical evaluation and necessary treatment. The written directive for opera-

tion of the place of confinement states specifically that when an "inmate who is displaying mentally disturbed behavior" is "placed in an isolation cell for the inmate's own safety, or that of the inmate population," the "psychologist/psychiatrist should be contacted *immediately* after confinement of the inmate, and the inmate should be evaluated within a twenty-four (24) hour period."

.    .    .    .    .

. . . In permitting such confinements, the prison directive comports with the eighth amendment. But, when the protective measures take the form of isolation, nude, in I.C. cell No. 5, we believe also that the administrative directive states the *constitutional minimum* in requiring that a "psychologist/psychiatrist . . . be contacted immediately after the confinement of the inmate, and the inmate . . . evaluated within a twenty-four (24) hour period." (emphasis added).

516 F.2d at 368–69.

When *McCray I* was decided, we knew that Smith had not notified a psychologist or psychiatrist until twenty hours had elapsed. Nevertheless, we thought that he might establish good faith immunity if he could prove that he reasonably understood that the administrative direction of immediate action was satisfied by action within twenty hours.

On remand, however, Smith changed his direction. He testified that he did not call a psychologist "immediately" because he did not think that McCray was mentally disturbed. He thought he was only emotionally disruptive.

The administrative regulations make a sharp distinction between one who is emotionally disruptive and one who is mentally disturbed. One who is being emotionally disruptive is threatening the peace and security of the prison but is not thought to be a threat to himself. Confinement of such a prisoner in an isolation cell is authorized for a cooling off period, which might be as much as one hour or such longer time as it takes the prisoner to calm down. Punitive use of an isolation cell upon such a person, however, is authorized. A mentally disturbed individual, on the other hand, may reasonably be thought a threat to himself. Removal and retention of the clothing and other possessions of such an individual may be reasonable insurance that they are not misused for self-inflicted injury. If a mentally disturbed individual is so confined, however, as McCray was, the immediate notice to a psychologist or psychiatrist is required.

In *McCray I* we accepted Smith's testimony that McCray was threatening harm to himself and was acting in a severely disturbed manner. If that were true, we were of the opinion that removal of his clothing and the deprivation of effects was an appropriate measure for the prisoner's own protection. We were further of the view that his confinement in the isolation cell would not have been in violation of the Constitution if the requirement of immediate notification to a psychologist or psychiatrist had been satisfied.

The underpinning of our reasoning in *McCray I* was completely dissolved during the hearing on remand, however, when Smith testified that he had considered McCray only as emotionally disruptive, that McCray was placed in the isolation cell for the cooling off period and that he thought he was not required to give the notice which is required when the isolated prisoner is thought to be mentally disturbed. The conditions under which Smith confined McCray were those appropriate for a mentally disturbed individual, but without the precaution of sending for professional assistance. The result was that McCray suffered all the deprivations of the harsher confinement with no chance of early relief through professional assistance.

■ On remand, Smith simply did not meet the possible conditions of showing a good faith defense which we envisioned in *McCray I.* He made no claim of compliance with a reasonable understanding of the psychologist notification rule. He simply shifted his position to say that he thought

McCray less seriously disturbed, that no psychologist or psychiatrist was needed and that no notice by him on the 20th was required. This is simply insufficient for a finding of qualified immunity based upon a good faith belief that what he did was lawful and in compliance with prison directives.

## II.

On the other occasion of isolation of McCray, Captain Burrell ordered him confined in a "mental observation" cell after McCray had set his mattress afire. There was fear that McCray would injure himself.

In *McCray I* we held that this confinement violated McCray's constitutional rights in two respects. The conditions in the mental observation cell were so stark that any confinement in it was held to be a *per se* violation of McCray's constitutional right. His right was further violated because there was no prompt notification of a psychologist or psychiatrist.

On remand, the district court found that Captain Burrell was entitled to a good faith immunity defense.

The mental observation cell is in the medical wing of the prison and is under the charge and supervision of the medical staff. Captain Burrell was not responsible for the conditions of the cell, and he had been informed that the cleaning procedures in such cells in the hospital wing were better than they appeared to be when we decided *McCray I.* Moreover, the directives requiring staff notification of a psychologist or psychiatrist clearly apply only when a mentally disturbed prisoner is isolated in an isolation cell. That directive does not apply to the general prison staff when a prisoner is transferred to the hospital wing to be placed in a mental observation cell. The omission is reasonable for, upon the transfer, McCray was removed from Captain Burrell's general supervision and authority. Responsibility for McCray's treatment and the conditions of his confinement were then in the medical staff. At that time, there was a reasonable basis for Captain Burrell's belief that the person or persons on duty in the medical wing, confining McCray in a mental observation cell, would immediately notify a psychologist or psychiatrist and arrange the mental observation which the transfer was intended to procure. After McCray's confinement for a period of forty-six hours without having been seen or observed by a psychologist or psychiatrist, Captain Burrell now may have reason to doubt that the medical staff will perform responsibly in confining, observing and treating a person transferred to a mental observation cell, but this record discloses no reason for any such doubt on Captain Burrell's part at the time of McCray's transfer.

■ For these reasons, there is adequate support in the record for the district court's finding and conclusion that Captain Burrell acted responsibly and in a good faith belief that the transfer he ordered was not in violation of any of McCray's constitutional rights. He is not responsible in damages for the later neglect and conduct of the medical staff. *Cf. Monell v. Department of Social Services*, 436 U.S. 658, 691–95, 98 S.Ct. 2018, 2036–2038, 56 L.Ed.2d 611 (1978).

## III.

The judgment of the district court is affirmed in part and reversed in part and the case remanded for an assessment and an award of appropriate damages for the harm suffered by McCray during the twenty-hour period of his confinement by Smith in an isolation cell before notification to a psychologist. They may be determined on this record and, if determined on this record, they need not be substantial in amount, but some award against Smith is necessary and appropriate. *See Carey v. Piphus*, 435 U.S. 247, 266, 98 S.Ct. 1042, 1053, 55 L.Ed.2d 252 (1978).

*AFFIRMED IN PART: REVERSED IN PART: REMANDED.*