788 F.2d 1319
 Early JOHNSON, Appellant,
v.
Sgt. J. WILLIAMS, C. Cobb, and Assistant Warden Tansy,
Employees, Cummins Unit, Arkansas Department of
Correction, Appellees.
Early JOHNSON, Appellant,
v.
Assistant Warden KERBY, Captain Dorsey, Captain Lay and
Captain Boreani, Employees, Cummins Unit, Arkansas
Department of Correction, Appellees.
 Nos. 84-1257, 84-1258.
 United States Court of Appeals,
Eighth Circuit.
 Submitted March 11, 1985.
Decided April 15, 1986.
 
 Ralph C. Ohm, Little Rock, Ark., for appellant.
 A. Carter Hardage, Asst. Atty. Gen., Little Rock, Ark., for appellees.
 Before McMILLIAN, Circuit Judge, HENLEY, Senior Circuit Judge, and FAGG, Circuit Judge.
 McMILLIAN, Circuit Judge.
 
 
 1
 In these consolidated appeals Early Johnson, an inmate at the Cummins Unit of the Arkansas Department of Corrections, appeals from final judgments entered in the District Court for the Eastern District of Arkansas dismissing his complaints filed pursuant to 42 U.S.C. Sec. 1983. For reversal appellant contends that the district court erred in finding that prison officials did not violate his eighth amendment rights by placing him in a "quiet cell" without clothing or bedding for approximately eighteen hours on two occasions. In the alternative, appellant argues that the district court erred in denying his motions for appointment of counsel. For the reasons discussed below, we reverse and remand.
 
 
 2
 Appeal No. 84-1258 arises from appellant's pro se Sec. 1983 complaint filed in December 1982. In the complaint appellant alleged that certain prison officials violated his eighth amendment right to be free from cruel and unusual punishment when they placed him in a "quiet cell" without clothing or bedding on May 24, 1981, for seventeen to eighteen hours. In February 1983 appellant filed a motion for appointment of counsel. The district court denied the motion because, in its opinion, the "facts were [not] so complicated that the appointment of counsel is required." In October 1983 appellant renewed his motion for appointment of counsel. The case was referred to a magistrate, who on November 15, 1983, conducted an evidentiary hearing.
 
 
 3
 At the hearing appellant appeared pro se. On direct examination appellant testified that he was placed in the quiet cell at approximately 9:00 p.m. and was not moved until sometime the next morning. The entirety of appellant's direct testimony appears at pages 4-6 of the transcript. On cross-examination, which appears at pages 12-46, appellant further stated that he slept nude on a "concrete slab" and was "good and cold."
 
 
 4
 Appellant also presented the testimony of three inmate witnesses who generally stated that prior to appellant's being placed in the quiet cell appellant had not caused any problems. In response to a question from one of the witnesses as to why appellant did not have counsel, the magistrate explained that "attorneys are not eager to volunteer for [Sec. 1983] cases because they are not paid unless they win" and "ninety-nine percent of [Sec. 1983 cases] are lost." Furthermore, the magistrate noted that appellant's claim was a "straightforward factual case." During questioning of another inmate witness, appellant lost his composure and informed the magistrate that he did not feel capable of presenting his case. Appellant again requested appointment of counsel, which was denied.
 
 
 5
 At the conclusion of appellant's evidence, appellees moved for an involuntary dismissal, asserting that even if appellant's evidence were true, appellant's placement in a quiet cell without clothing or bedding for eighteen hours did not constitute a constitutional violation. The magistrate denied the motion, stating that appellant's allegation of being "placed naked and without bedding overnight in a cell ... [could] be viewed under Maxwell v. Mason, [668 F.2d 361 (8th Cir.1981),] and Wycoff v. Brewer, [572 F.2d 1260 (8th Cir.1978) ], given the circumstances, as a constitutional violation." In Maxwell v. Mason this court held under the facts of the case that an inmate's confinement for fourteen days without clothing in a "strip cell" as a punitive measure constituted cruel and unusual punishment. 668 F.2d at 363. In Maxwell the district court had found that "the deprivation of clothing and bedding [bore] 'no relationship whatever to any security measure under the facts of the case' and amounted to 'an unnecessary infliction of pain' " and that such treatment was " 'wholly inconsistent with the current minimum standards of respect for the dignity of human beings.' " Id. In Wycoff v. Brewer this court "condemn[ed] without reservation plaintiff's confinement in strip cells under the conditions that had been mentioned." 572 F.2d at 1266. In Wycoff the inmate had been confined for a total of forty-six days "completely nude; the cell was or it could be darkened; the inmate had no bedding or cover. While the cell contained a sink and a commode, in some circumstances, the inmate was not provided with toilet articles or toilet paper." Id. at 1263.
 
 
 6
 Here appellees testified that appellant had been placed in the quiet cell without clothing and bedding for purposes of control. Appellees testified that prior to being placed in the quiet cell, appellant had threatened a guard and was a disruptive influence on the other inmates. Appellees explained that the denial of clothes was necessary because appellant could have used the clothes to cause flooding in a urinal.[1] Appellees further explained that the denial of clothes was used as a "bargaining tool" because an inmate deprived of his clothes could "bargain" for them by modifying his behavior.
 
 
 7
 In oral recommended findings of fact and conclusions of law, the magistrate found that appellant's initial placement in the quiet cell for purposes of control was constitutional but that his continued confinement for "more than a few hours" violated the eighth amendment. In reaching this conclusion, the magistrate credited appellees' assertion that appellant had been a disruptive influence and that his initial placement in the quiet cell without clothing and bedding was related to the institution's legitimate interest in behavior control. In this case, however, the magistrate found that continued confinement was unconstitutional because appellees had not monitored appellant's behavior throughout the night to determine whether the restrictive conditions of confinement remained necessary. The magistrate then dismissed appellant's complaint on the basis of good faith qualified immunity.
 
 
 8
 Both sides filed objections to the magistrate's report. The district court rejected the magistrate's proposed finding of a constitutional violation and agreed with appellees that appellant's confinement in the quiet cell without clothes or bedding for eighteen hours did not approach the unlawful periods of confinement in Wycoff v. Brewer and Maxwell v. Mason. The district court also rejected the magistrate's conclusion that appellees had a constitutional duty to monitor appellant's behavior while confined in the quiet cell.
 
 
 9
 Appeal No. 84-1257 arises from appellant's pro se complaint filed in April 1983 in which he alleged an eighth amendment violation when he was again placed in a quiet cell without clothing or bedding for approximately eighteen hours in February 1983. In May 1983 appellant filed a motion for appointment of counsel. In July 1983 the district court denied the motion on the ground that the "allegations of [appellant's] complaint are not sufficiently complex to warrant appointment of counsel."
 
 
 10
 On February 6, 1984, the district court held an evidentiary hearing. Appellant, appearing pro se, did not testify but presented seven inmate witnesses who generally testified that appellant was not causing problems prior to being placed in the quiet cell. Appellees testified that appellant's placement in the quiet cell without clothing or bedding was necessary because he was creating a disturbance and inciting other inmates to create disturbances. In response to appellant's cross-examination of one of appellees's witnesses concerning the temperature of the quiet cell during appellant's confinement, the witness stated he did not have the temperature record of the wing on the particular day. The witness indicated the record might be available in the master log but that he had not had the time to locate it. The witness, however, testified that the temperature of the area in which the quiet cell was located on two days before and one day after appellant's confinement was approximately 80 degrees.
 
 
 11
 In oral findings of fact and conclusions of law, the district court noted that the case rested on credibility determinations. The court credited appellees' testimony that appellant's confinement in the cell without clothing was necessary for purposes of control and concluded the confinement did not constitute cruel and unusual punishment. Although the district court had "some question about the matter of clothes," the court was persuaded that a person confined nude in the cell would not be uncomfortable.
 
 
 12
 This circuit has held that "an indigent pro se prison litigant who has met his burden of showing his complaint not to be frivolous pursuant to 28 U.S.C. Sec. 1915(d) should be appointed counsel where necessary." Reynolds v. Foree, 771 F.2d 1179, 1181 (8th Cir.1985) (per curiam). The district court should "determine whether the nature of the litigation is such that plaintiff as well as the court will benefit from the assistance of counsel." Nelson v. Redfield Lithograph Printing, 728 F.2d 1003, 1005 (8th Cir.1984). In the present cases the district judges found that appellant had met his burden of demonstrating that his claims were not frivolous but denied his motions for appointment of counsel solely on the basis that the claims did not raise factually complex issues.[2]
 
 
 13
 Although factual complexity is certainly a relevant factor for a district court to consider in determining an indigent litigant's need for appointment of counsel, it is not the only factor. Maclin v. Freake, 650 F.2d 885, 888 (7th Cir.1981) (Maclin) (per curiam). We believe that in addition to factual complexity, the district court should also consider the ability of an indigent to investigate the facts, id., citing Shields v. Jackson, 570 F.2d 284 (8th Cir.1978) (per curiam), and Peterson v. Nadler, 452 F.2d 754 (8th Cir.1971) (per curiam), the existence of conflicting testimony, Maclin, 650 F.2d at 888, citing Manning v. Lockhart, 623 F.2d 536 (8th Cir.1980) (per curiam), the ability of an indigent to present his claim, Maclin, 650 F.2d at 889, citing Drone v. Hutto, 565 F.2d 543 (8th Cir.1977) (per curiam), and the complexity of the legal issues. Maclin, 650 F.2d at 889. These factors are "by no means an exclusive checklist," id., and the weight to be given any one factor will vary with the case.
 
 
 14
 Consideration of the above factors leads us to conclude that the district court abused its discretion in failing to appoint counsel in these cases. First, we disagree with the district judges' belief that appellant's allegation of being confined nude and without bedding in a quiet cell for eighteen hours raised a simple factual issue. The district judges appeared to agree with appellees' suggestion that in conditions of confinement cases length of time alone is determinative and that confinement for eighteen hours is de minimis and could never rise to a constitutional violation. Appellant's counsel on appeal asserts, and we agree, that before a court should find that confinement without bedding or clothing is not a constitutional violation a court must be informed of other relevant conditions of confinement in addition to length of confinement. See Hutto v. Finney, 437 U.S. 678, 685-86, 98 S.Ct. 2565, 2571, 57 L.Ed.2d 522 (1978) ("punitive isolation 'is not necessarily unconstitutional, but it may be, depending on the duration of the confinement and the conditions thereof' ") (citation omitted). In these cases, we agree with appellant's counsel that as a result of appellant's pro se representation the record is undeveloped as to the critical facts regarding the physical characteristics of the cell, including the dimensions, toilet facilities, sleeping arrangements, lighting, ventilation, and temperature.[3] The record is also unclear at what time appellant's clothing was returned.
 
 
 15
 Our reading of the record also raises a serious question as to appellant's ability to present his claim in a neutral and impartial fashion. At the conclusion of the hearing before the magistrate, the magistrate informed appellant that his "attitude and conduct ... came as close to being contemptuous as any conduct [the magistrate had] seen when presiding at trial."[4]
 
 
 16
 We also note the existence of conflicting evidence as to the reason for appellant's initial placement in the quiet cell. This court has stated that "appointment of counsel is appropriate ... where there is a question of credibility of witnesses and where the case presents serious allegations of fact which are not facially frivolous." Manning v. Lockhart, 623 F.2d at 540. "In such cases, it is more likely that the truth will be exposed where both sides are represented by those trained in the presentation of evidence and in cross-examinations." Maclin, 650 F.2d at 888.
 
 
 17
 Lastly, as indicated by the conflict between the magistrate who found that appellant's continued confinement in the quiet cell was an eighth amendment violation and the district judges who found no such violation, we believe these cases present difficult, unsettled legal issues. See Maxwell v. Mason, 668 F.2d at 363 n. 8 (this court "intimate[d] no judgment as to whether deprivation of clothing or bedding as a punitive measure, standing alone, would be cruel and unusual"); Kelly v. Brewer, 525 F.2d at 400 (constitutionality of administrative segregation "depends upon the relative humanness of the conditions of the segregated confinement and in individual cases upon the existence of a valid and subsisting reason ... for the segregation"); see also McCray v. Burrell, 516 F.2d 357, 367-71 (4th Cir.1975) (banc) (eighth amendment violation arising from inmate's confinement in isolation cell nude for 48 hours for mental observation; remand on issue of qualified immunity), appeal after remand, 622 F.2d 705, 707-08 (no qualified immunity because prison official conceded inmate not placed in cell for mental observation), cert. denied, 449 U.S. 997, 101 S.Ct. 537, 66 L.Ed.2d 295 (1980); O'Connor v. Keller, 510 F.Supp. 1359, 1373 (D.Md.1981) (eighth amendment violation arising from inmate's confinement nude in cell for 48 hours; no monitoring to determine inmate's mental or emotional state; no good faith immunity). "We think it follows that where the law is not clear, it will often best serve the ends of justice to have both sides of a difficult legal issue presented by those trained in legal analysis." Maclin, 650 F.2d at 889.
 
 
 18
 Accordingly, the judgments of the district court are reversed and remanded for proceedings consistent with this opinion.[5]
 
 
 19
 HENLEY, Senior Circuit Judge, concurring.
 
 
 20
 I agree with my brother McMillian that subject cases should be remanded, counsel appointed and further proceedings conducted. The reasons impelling me to concurrence, however, differ somewhat from his; at least they differ in emphasis on some of the same or similar factors. The facts are restated briefly.
 
 
 21
 We have consolidated appeals in two cases filed by Early Johnson alleging eighth amendment violations arising from two separate incidents in which Johnson was kept for a time in a "quiet cell" at the Cummins Unit of the Arkansas Department of Correction. Each case was assigned to a different judge.
 
 
 22
 Our appeal, No. 84-1258, involving an episode that occurred in May, 1981 was referred to a magistrate who conducted an evidentiary hearing on November 15, 1983.
 
 
 23
 In No. 84-1258 Johnson testified that he was placed in a quiet cell about 9:00 p.m. and left overnight for fifteen or eighteen hours without clothing and that he "was good and cold." Other inmates testified that Johnson had not caused any problems before being placed in the quiet cell.
 
 
 24
 According to the appellees, problems began when Johnson, cursing and threatening the guards, refused to be handcuffed and was moved to a two-man cell after some of his cellmates in a four-man cell caused a disturbance. In a search of the four-man cell guards found a sock containing twelve "D" size batteries, two knives and a variety of pills. After being placed in the two-man cell Johnson continued to yell at and threaten the guards, and other inmates started encouraging and joining Johnson. Then, based on the need to control Johnson and a fear that the other inmates would start destroying the prison, the officials decided to place Johnson in the quiet cell. Appellees explained that they took Johnson's clothes so that he would not flood the commode, and as a bargaining tool to encourage him to modify his behavior.
 
 
 25
 The magistrate found that while Johnson's initial placement in the quiet cell might well have been lawful as a bargaining tool, or control device, there was a duty to monitor the prisoner from time to time throughout the night to determine whether the conditions of confinement remained necessary. Finding an absence of any such monitoring, the magistrate concluded that plaintiff's right to be free from cruel and unusual punishment was violated because the confinement became punishment rather than control. The magistrate went on, however, to conclude, citing Maxwell v. Mason, 668 F.2d 361, 365-66 (8th Cir.1981), that good faith immunity precluded recovery and thus that the complaint should be dismissed.
 
 
 26
 On review of the magistrate's proposed order the district court found no such period of confinement as would approach the unlawful periods of confinement in Maxwell, 668 F.2d at 364 (inmate confined in undershorts for fourteen days), and Wycoff v. Brewer, 572 F.2d 1260, 1264-65 (8th Cir.1978) (inmate confined in strip cell for approximately forty-six days), and held that there was no constitutional duty to monitor appellant's behavior during the short period of his incarceration in the quiet cell.
 
 
 27
 The court otherwise accepted the magistrate's recommendation and dismissed the complaint.
 
 
 28
 Johnson filed the complaint in appeal No. 84-1257 after he was again placed in a quiet cell for approximately eighteen hours in February, 1983.
 
 
 29
 The district court held an evidentiary hearing at which seven inmates testified that Johnson had not been creating a disturbance before he was placed in the quiet cell. Rather, they claim they were yelling with Johnson because their commodes were flooding and they were trying to gain the guards' attention.
 
 
 30
 Appellees testified that before Johnson was placed in the quiet cell he assaulted a guard and another inmate. Some of his property was then taken from him and he was told it would be returned if he controlled his behavior. Instead, he started yelling and banging on his cell and encouraged other prisoners to do the same. The prison officials, believing this was leading up to a riot situation, placed Johnson in a quiet cell where he was checked on from time to time throughout the day. The temperature of the quiet cell was in the eighties on the day before and the second day after he was placed in it. Appellees testified that there was no flooding in the cells.
 
 
 31
 The district court in making from the bench its oral findings of fact and conclusions of law stated that the appellees' testimony was more credible than that of the inmate witnesses. The court then found for the appellees stating that, while there was some question about taking Johnson's clothes, placing appellant in the quiet cell was for purposes of control and the confinement did not constitute cruel and unusual punishment.
 
 
 32
 In responding to Johnson's claims of eighth amendment violations, we are mindful that our inquiry is limited to the question whether constitutional violations have occurred and may not reflect our idea of how best to run the prison. Bell v. Wolfish, 441 U.S. 520, 539, 99 S.Ct. 1861, 1874, 60 L.Ed.2d 447 (1979). How best to operate a penal institution ordinarily is a matter for prison officials to decide and we will interfere only when a prisoner has proven the officials have clearly exceeded constitutional boundaries. Jones v. Mabry, 723 F.2d 590, 595 (8th Cir.1983), cert. denied, 467 U.S. 1228, 104 S.Ct. 2683, 81 L.Ed.2d 878 (1984). In determining the constitutionality of the officials' actions in present context, we consider whether they were taken for reasons of punishment or were merely incident to other legitimate governmental reasons. Bell, 441 U.S. at 538, 99 S.Ct. at 1873-74.
 
 
 33
 We have held that confinement similar to that imposed here constituted a violation of the eighth amendment. See Maxwell, 668 F.2d at 365. This case, of course, may be distinguished from Maxwell. First, in Maxwell, it was clear that the prisoner's placement in the strip cell was for punitive reasons. Id. at 363. Here, it may be that Johnson, initially at least, was not placed in the quiet cell as punishment but rather for reasons of control.
 
 
 34
 Maxwell can be further distinguished from this case in that there the confinement was for fourteen days, whereas in both situations here Johnson was confined for approximately eighteen hours. In considering a possible constitutional violation, certainly length of confinement is one of the factors to be considered. Hutto v. Finney, 437 U.S. 678, 686, 98 S.Ct. 2565, 2571, 57 L.Ed.2d 522 (1978); Hoptowit v. Ray, 682 F.2d 1237, 1258 (9th Cir.1982). The longer a prisoner is denied the basic necessities of prison life, the closer his confinement comes to being unconstitutional. Hoptowit, 682 F.2d at 1258.
 
 
 35
 But time of confinement is not the sole consideration in determining eighth amendment questions. The conditions of confinement are also of importance, see Hutto, 437 U.S. at 687, 98 S.Ct. at 2571-72; Finney v. Arkansas Board of Correction, 505 F.2d 194, 207 (8th Cir.1974); Finney v. Hutto, 410 F.Supp. 251, 275 (E.D.Ark.1976), as is punitive purpose.
 
 
 36
 Were we considering each of the present appeals solely on its own record facts apart from the other and unmindful of similar litigation, those records might well merit affirmance.
 
 
 37
 It is clear that Johnson is an assaultive recalcitrant prisoner given to violence and litigation. It may well be true that with respect to both episodes some effort to control him was necessary and indeed that his confinement in the quiet cell for some short period of time was appropriate.
 
 
 38
 It may be that there is no connection between the two cases demonstrating any continuous egregious use of the quiet cell. Neither district judge in his findings or conclusions saw fit to make reference to the other pending case if indeed he knew about it.
 
 
 39
 But we do not consider these appeals in a vacuum nor apart from the backdrop of prison litigation in this circuit, especially as it involves the Arkansas Penitentiary.
 
 
 40
 With respect to the 1983 incident, there was testimony from four other inmates that they had been incarcerated in the quiet cell for varying periods of time, that it is cold in those cells, and that the way to get attention back there is to beat on the door.
 
 
 41
 Although Superintendent Lockhart stated that as a matter of policy an inmate is observed about every thirty minutes at the most, there is some indication that that policy frequently is violated and that the guard at the control room depends upon hearing the prisoner "holler" loud enough to be heard by the guard when the prisoner wants attention.
 
 
 42
 As a matter of administrative policy also, when a prisoner is placed in the quiet cell an incident report must be filled out and filed. No such report concerning the 1983 episode could be found.
 
 
 43
 In December, 1982 inmate Larry Jones addressed to the Warden a grievance about indiscriminate use of nude time in the quiet cell as punishment. Both Warden Sargent and Assistant Director Morgan responded that stripping was done only to prevent bodily harm to those inmates with suicidal tendencies or who were destroying their clothing. Neither administrator faced the punishment issue and, as is clear by now, persons who are not suicidal or destroying their clothing are placed nude in the quiet cell for some purposes other than prevention of suicide or destruction of clothing.
 
 
 44
 With respect to the 1981 incident, it is fairly inferable, and the magistrate found, that Johnson was left overnight without periodic review to determine whether control continued to be necessary. Although an incident report was filed, no quiet cell report (called 005) seems to have been filled out or filed.
 
 
 45
 Looking narrowly at the respective case records, the departures from policy and administrative regulation with respect to the quiet cell may be trivial in a constitutional sense and may show only continued lack of professionalism and good judgment on the part of maximum security personnel, see Finney v. Hutto, 410 F.Supp. at 277. On the other hand, they may be an indication of a more serious problem of constitutional dimension.
 
 
 46
 Unfortunately, we do not have records in these cases as complete as we should have to enable us, or the district courts initially, to determine fully the issues raised directly or by fair implication. Thus, it becomes important to address the question whether counsel should have been appointed as requested by Johnson in both cases.
 
 
 47
 Johnson's requests were denied largely, if not entirely, on the ground that the cases were not complex and appointed counsel was unnecessary. While there is no constitutional requirement that counsel be appointed for an indigent plaintiff in a civil case, such an appointment is allowed under 28 U.S.C. Sec. 1915(d). Wiggins v. Sargent, 753 F.2d 663, 668 (8th Cir.1985). In order to obtain appointed counsel, a plaintiff must first establish a colorable case and then the district court may appoint counsel if "the litigation is such that plaintiff as well as the court will benefit from the assistance of counsel." Nelson v. Redfield Lithograph Printing, 728 F.2d 1003, 1005 (8th Cir.1984). In instances where a plaintiff has demonstrated familiarity with caselaw and judicial procedure, clearly a court may refuse to appoint counsel. Cf. Mosby v. Mabry, 697 F.2d 213, 214-15 (8th Cir.1982). The court, of course, may wisely consider the ability of the plaintiff to investigate the facts, the existence of conflicting testimony (a matter which may not be clear at the time the motion is made), the ability of the plaintiff to present the case, and its legal complexity, see Maclin v. Freake, 650 F.2d 885, 888-89 (7th Cir.1981) (per curiam).
 
 
 48
 The essence of the matter is that a motion for appointment should be given serious consideration if the plaintiff has not alleged a frivolous or malicious claim, Nelson, 728 F.2d at 1005, and we review only for abuse of discretion.
 
 
 49
 Here, it is clear that Johnson had a fair understanding of the trial process and of the facts as they affected him and his neighbors in the maximum security unit. But there is little indication that he understood the import of the doctrine of "good faith immunity" as it might entail a history of Arkansas prison litigation, or that he had the skill to bring to the attention of the district court the full import of the practices with respect to use of the quiet cell for alleged punishment of others. To the contrary, when he attempted to make some such showing his effort was sharply limited on objection of the appellees.
 
 
 50
 Moreover, there is some indication that at trial, as elsewhere, Johnson is belligerent and antagonistic at times to the point of contempt.
 
 
 51
 In the totality of the circumstances, I join in reversing judgment of dismissal in both of subject cases and remanding for appointment of counsel and for further proceedings.[1]
 
 
 
 [1]
 Appellees also explained that a suicidal inmate might be deprived of clothing to protect himself. See McMahon v. Beard, 583 F.2d 172, 175 (5th Cir.1978) ("conditions to prevent self-harm can continue as long as the threat of suicide is present"). In this case, however, it is undisputed that appellant was not suicidal
 
 
 [2]
 The magistrate also expressed a reluctance to appoint counsel in Sec. 1983 cases because Sec. 1915 did not provide for payment of attorney's fees. This court has disapproved of "such reluctance." Nelson v. Redfield Lithograph Printing, 728 F.2d 1003, 1005 (8th Cir.1984)
 
 
 [3]
 At oral argument counsel for appellees stated that he believed the "quiet cell" was the same cell described in Holt v. Hutto, 363 F.Supp. 194, 208 (E.D.Ark.1973) (Henley, J., District Judge), aff'd in part and rev'd in part, 505 F.2d 194 (8th Cir.1974), on remand, 410 F.Supp. 251 (1976), aff'd, 548 F.2d 740 (1977), aff'd, 437 U.S. 678, 98 S.Ct. 2565, 57 L.Ed.2d 522 (1978). As described in 1973, "those cells [the quiet cells] which are soundproof are located in the middle of the building; each one of them has a double door; when the outer door is closed, the inmate is in complete darkness. The cells are essentially devoid of furniture and fixtures; bedding is not supplied." 363 F.Supp. at 208. Counsel stated his belief that the cells had perhaps been improved
 
 
 [4]
 At the hearing before the magistrate appellant stated he did not function well under pressure and that he believed that during the trial appellees' counsel was deliberately attempting to provoke him. In light of appellees' counsel's in-court, inflammatory characterization of the proceedings as a "come-to-Pine-Bluff-for-a-cheeseburger-day," appellant's perception may not have been unreasonable
 
 
 [5]
 We leave to the district court on remand to resolve in the first instance, if necessary, the issue of qualified immunity
 
 
 [1]
 In coming to this conclusion, I am aware of, and concerned by, the possibility that my views may be influenced by long judicial involvement in Arkansas prison litigation. One can only hope that such influence, if any, does not place undue burdens on the bench, bar, or litigants