NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 14-3692
_____

MICHAEL FLETCHER,
Appellant

v.

EDWARD GRYNKEWICZ, III
_____

On Appeal from United States District Court
for the Middle District of Pennsylvania
(M.D. Pa. No. 1-12-cv-00086)
District Judge: Honorable Martin C. Carlson
_____

Argued January 19, 2016
Before: FISHER, CHAGARES and BARRY, *Circuit Judges*.

(Filed: March 14, 2016)

Christian D. Sheehan, Esq. **ARGUED**
Vinson & Elkins
2200 Pennsylvania Avenue, N.W., Suite 500 West
Washington, DC 20037

Nancy Winkelman, Esq.
Schnader Harrison Segal & Lewis
1600 Market Street, Suite 3600
Philadelphia, PA 19103
        *Counsel for Appellant*

Christine E. Munion, Esq. **ARGUED**
William J. Ferren & Associates
10 Sentry Parkway

Suite 301
Blue Bell, PA 19422
        *Counsel for Appellee*

_____

OPINION[*]

_____

FISHER, *Circuit Judge*.

When Michael Fletcher was arrested, he was tased either two or three times; it is

that arrest that gives rise to this action. Though he later pleaded guilty to numerous

criminal charges, Fletcher also brought a civil case for excessive force against the officers

who arrested him. During the course of his lawsuit, each of his six requests for the

appointment of counsel was denied. Fletcher proceeded to a jury trial pro se and lost. He

now challenges the denials of his requests for appointment of counsel. Because we find

no abuse of discretion, we will affirm.[1]

I.

We write principally for the parties, who are familiar with the factual context and

legal history of this case. Therefore, we will set forth only those facts that are necessary

to our analysis.

On the night of the incident in question, Michael Fletcher was at Megan Gavin's

house, along with two other women, Nina Waugh and Trisha Evans. Fletcher was

_____

[*]     This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does
        not constitute binding precedent.
[1]     The Court thanks Schnader Harrison Segal & Lewis's Pro Bono Program for its
        work in this matter. The Court acknowledges the excellent advocacy of Christian
        D. Sheehan and Nancy Winkelman on behalf of Mr. Fletcher.

2

drinking beer and cognac and attempting to sell drugs, which he kept in Gavin's freezer. He was armed with a small gun, which at one point went off. Gavin, whose infant daughter was in the house, became angry, began arguing with Fletcher, and locked him out of the house. Upset that he had been locked out of the house and desiring to regain possession of his drugs, Fletcher broke one of Gavin's windows, kicked down her door, and turned over her refrigerator. Once inside the house again, he waved his gun in the faces of Waugh and Evans, threatened to shoot them, and then fired his gun a few times in the hallway. When Waugh and Evans tried to escape, Fletcher attacked Evans, but Waugh jumped on top of Fletcher, removed the gun from his hand, and hit him with it. After that, as the two women tried to escape out the back door, Waugh fell, allowing Fletcher to catch up to her, at which point he took the gun from her hand, put it to her back, grabbed her by the jacket, and demanded that she walk with him. They began to walk down the street.

Fletcher had Waugh at gunpoint when the police arrived. Four Harrisburg police officers—Edward Grynkewicz, Robert Fleagle, Uriah Aviles, and Robert Fegan—who came in response to the sound of gunshots, approached Fletcher and Waugh. Fleagle ordered Fletcher to drop his gun, and Fletcher complied by throwing the gun under a nearby car. The facts from this point on were disputed at trial. Fletcher contended that he raised his hands in the air and turned toward Grynkewicz, who fired his taser at him. Fletcher fell to the ground. He said that he then began to convulse uncontrollably on the ground and then was tased a second time. Grynkewicz and the defense witnesses,

3

including Waugh, said that Fletcher did not fall to the ground after he was tased the first time. Rather, as Grynkewicz testified, Fletcher turned toward him after being struck by the first shot of the taser and began screaming, "Oh, that feels good, that feels good."[2] Grynkewicz testified that Fletcher attempted to get back up when the other officers moved in to put handcuffs on him. At that point, after commanding Fletcher to stop resisting, Grynkewicz tased him a second time, and the other officers were able to cuff him. Fletcher said that, once handcuffed, he was tased a third time—this time in the testicles—but the other witnesses deny this.

The officers then took Fletcher to the hospital, where he was treated for various conditions, including PCP intoxication, alcohol intoxication, and respiratory failure. State prosecutors charged Fletcher with various offenses; in December 2010, Fletcher pleaded guilty to a number of those charges, including, among others, burglary, illegal possession of a firearm, drug charges, terroristic threats, and recklessly endangering another person.[3] Fletcher received a sentence of five to ten years' imprisonment.

**B.     Procedural History**

From prison, in December 2011, Fletcher filed a pro se civil rights lawsuit pursuant to 42 U.S.C. § 1983 against the four officers who arrested him, alleging that they had used excessive force during the arrest. During the litigation that followed, Fletcher, who was proceeding in forma pauperis, requested on six different occasions that

---

2      (App. 882.)
3      (App. 580–82.)

counsel be appointed for him. Fletcher made his last request about a month and a half before trial. Each request was denied.[4]

Fletcher failed to take any discovery during the discovery period, but he later requested documents from the defendants, who agreed to produce them. The defendants then filed a motion for summary judgment, in which they argued that the amount of force they had used in arresting Fletcher was reasonable as a matter of law. Thereafter, the District Court adopted a report and recommendation denying the defendants' motion for summary judgment. The Court reasoned that if a jury believed Fletcher's account of the events—that he was tased three times, once while handcuffed—the jury reasonably could conclude that the force used by the officers was excessive.

Shortly before trial, Fletcher voluntarily dismissed three of the four defendants— all the officers except for Grynkewicz. Then, on July 28 and 29, 2014, Fletcher's claims were tried to a jury. Fletcher's case consisted of his own brief narrative testimony. He presented no other witnesses and introduced no exhibits. Once Fletcher rested, the defense presented its case, which consisted of testimony from Grynkewicz, Fleagle, and Waugh. The jury returned a verdict, finding that Grynkewicz had not used excessive force in arresting Fletcher. After the District Court entered final judgment, Fletcher appealed.

---

4      (App. 3–5; 6–9; 10–14; 15–17; 18–23; 24–34.)

Civil litigants have neither a constitutional nor a statutory right to appointment of counsel.[6] Nevertheless, 28 U.S.C. § 1915(e)(1) provides that "[t]he court may request an attorney to represent any person unable to employ counsel." Appointment of counsel is discretionary, and we review the district court's decision to deny counsel for an abuse of discretion.[7] "An abuse of discretion arises when the district court's decision rests upon a clearly erroneous finding of fact, an errant conclusion of law or an improper application of law to fact."[8]

In *Tabron v. Grace*, we first set forth the criteria that district courts should use to determine whether to grant a request for appointment of counsel.[9] First, as a threshold matter, the district court must consider the merits of the plaintiff's claim to determine whether it "has arguable merit in fact and law."[10] If it does, the court should consider additional factors, including the following: (1) the plaintiff's ability to present his or her own case, (2) the difficulty of the particular legal issues, (3) the degree to which factual investigation will be necessary and the ability of the plaintiff to pursue investigation, (4) the plaintiff's capacity to retain counsel on his or her own behalf, (5) the extent to which

---

5    The District Court had jurisdiction under 42 U.S.C. § 1983 and 28 U.S.C. § 1331. We have jurisdiction under 28 U.S.C. § 1291.

6    *Parham v. Johnson*, 126 F.3d 454, 457 (3d Cir. 1997).

7    *Id*.

8    *Williams v. Astrue*, 600 F.3d 299, 301 (3d Cir. 2009) (internal quotation marks omitted).

9    6 F.3d 147, 155 (3d Cir. 1993).

10   *Id*.

a case is likely to turn on credibility determinations, and (6) whether the case will require testimony from expert witnesses.[11] "[W]here a plaintiff's case appears to have merit and most of the aforementioned factors have been met, courts should make every attempt to obtain counsel."[12] We have cautioned, however, that district courts "should exercise care in appointing counsel because volunteer lawyer time is a precious commodity and should not be wasted on frivolous cases."[13]

The Court below concluded that Fletcher's claims had arguable merit in fact and law and had thus met the threshold requirement for appointment of counsel. The defendants' motion for summary judgment was denied because there was a genuine issue of material fact about the reasonableness of the officers' actions when they arrested Fletcher.[14] The Court explained that a reasonable jury could conclude (based on Fletcher's averments) that Fletcher was handcuffed and subdued when the officers used a taser on him. The judges below uniformly concluded, however, that, at the time of each request, the *Tabron* factors did not weigh in favor of appointing counsel for Fletcher. Their denials of Fletcher's requests for appointment of counsel did not rest upon a clearly erroneous finding of fact, and we therefore find no abuse of discretion.

First, Fletcher was able to present his own case. He demonstrated that he was capable of filing and responding to motions, and he successfully requested discovery

---

11    *Montgomery v. Pinchak*, 294 F.3d 492, 499 (3d Cir. 2002) (citing *Tabron*, 6 F.3d at 155–57).

12    *Parham*, 126 F.3d at 461.

13    *Id.* at 458.

14    (App. 149–54.)

(even if he did so only after discovery formally closed).[15] When considering each of Fletcher's pretrial requests for counsel, the Court below concluded that Fletcher was effective in presenting his case pro se.[16] This finding, at the time it was reached by each judge in the course of the litigation, was not clearly erroneous.

Second, the legal issues involved in this case were not complex. Fletcher admits in his brief that the general legal principles regarding excessive force claims are well settled.[17] He asserts that, although the legal issue is simple, adequate presentation of his claim would be difficult.[18] This assertion is meritless. The central issues in this case were (1) whether Fletcher was tased two or three times, (2) whether he was tased after being handcuffed, and (3) where on his body he was tased.[19] In this way, Fletcher's excessive force claim differs from, for example, cases alleging deliberate indifference to serious medical needs—cases that are seemingly simple but involve complex presentation due to the nature of the evidence necessary to prove the ultimate issue.[20]

---

15      Fletcher filed two belated motions requesting discovery. (App. 213–14, 229–30.) The defendants agreed to produce the requested documents. (App. 231–32.)

16      *See, e.g.*, (App. 12) ("Fletcher has demonstrated an ability to effectively present his own case.").

17      (Fletcher Br. 28) (citing *Graham v. Connor*, 490 U.S. 386, 394–97 (1989)).

18      *See Pinchak*, 294 F.3d at 502 ("[E]ven where the ultimate legal issue appears relatively simple . . . simplicity in the allegation supporting the claim does not translate into simplicity in the presentation of the claim." (internal quotation marks and alterations omitted)).

19      It was Fletcher's averments on these factual issues that allowed his excessive force claim to proceed past summary judgment. (App. 151–53.)

20      *See Pinchak*, 294 F.3d at 502.

Third, because of the simplicity of Fletcher's claim—and the corresponding simplicity of the required proof—very little factual investigation was necessary. Fletcher needed to perform basic discovery related to how many tasers were fired at him on the night he was arrested and who fired them. His belated discovery requests appear directed toward exactly those questions, which means that Fletcher was capable of pursuing the necessary factual investigation.[21]

Fourth, expert testimony was not necessary to prove Fletcher's claim. This case differs from those cases in which experts were needed, such as those involving deliberate indifference to medical needs.[22] In Fletcher's case, other evidence (witness testimony, for instance) could have established the necessary elements of his excessive force claim. As explained, the key factual issues in Fletcher's case were how many times he was tased and where on his body those taser strikes landed. Expert testimony, on medical issues or on the effects of tasers, were not necessary for the jury to make those determinations.

Fifth, because the case came down to two competing stories—the one told by Fletcher versus the one told by every other witness—credibility was important to the outcome. Fletcher points out that several important determinations in this case depended on which version of the facts the jury believed—Fletcher's or that provided by

---

21    (App. 213–14, 229–30.)
22    *See, e.g.*, *Parham,* 126 F.3d at 460 ("A medical malpractice case involves complex facts and medical records that even most lawyers struggle to comprehend. Hence, most of these cases require expert testimony."); *Pinchak*, 294 F.3d at 504 (explaining that "to prove any serious deterioration in his heart's condition or in his immune system, [the plaintiff] would need the testimony of a medical expert").

Grynkewicz, Fleagle, and Waugh. Of course, all cases, in one way or another, rely on credibility determinations.[23] "[W]hen considering this factor, courts should determine whether the case was solely a swearing contest."[24] Although the trial may ultimately have come down to a swearing contest, it was not clear before the trial that would be the case. For instance, Fletcher requested all audio and video recordings from the police cruisers the night of his arrest, and the defendants agreed to produce them.[25] Fletcher did not introduce such evidence at trial, but he could have done so. Thus, at the time when he requested the appointment of counsel, it was not clear that the trial's outcome would be decided solely on the basis of credibility.[26]

The only factor that weighs in Fletcher's favor is his inability to retain counsel of his own. There is no question that Fletcher was unable to find a lawyer to voluntarily represent him. As we have explained in the past, though, "volunteer lawyer time is extremely valuable" and "district courts should not request counsel under [§ 1915(e)(1)] indiscriminately."[27] That Fletcher was unable to find a lawyer to represent him does not, on its own, justify the appointment of counsel.

---

23    *Parham*, 126 F.3d at 460 ("While the case ultimately may have relied upon credibility, it is difficult to imagine a case that does not.").

24    *Id.*

25    (App. 214, 231–32.)

26    *See* (App. 8) ("As in all cases, credibility may be an issue, but at this point we cannot say that the case will be decided solely on the basis of credibility."); (App. 12.)

27    *Tabron*, 6 F.3d at 157.

Considering all of these factors, we conclude that the judges below did not abuse their broad discretion in denying Fletcher's requests for appointment of counsel. Fletcher demonstrated his ability to manage the litigation of this straightforward case that involved little discovery and required no experts. At the point in time when each request was made, the judges below did not abuse their discretion in finding that the *Tabron* factors did not weigh in favor of appointing counsel.[28]

## III.

For the foregoing reasons, we will affirm.

---

[28]  Fletcher has filed a motion for leave to supplement the record on appeal to include the transcript of a suppression hearing in his related criminal action. This transcript would, according to Fletcher, have been useful for impeachment of Grynkewicz. He says that this further supports his contention that counsel should have been appointed in this case because counsel would have requested that transcript and used it in cross-examination of Grynkewicz at trial. "[I]n exceptional circumstances a court of appeals may allow a party to supplement the record on appeal." *Acumed LLC v. Advanced Surgical Servs., Inc.*, 561 F.3d 199, 226–27 (3d Cir. 2009). To determine whether the record should be supplemented, we evaluate three factors: "(1) whether the proffered addition would establish beyond any doubt the proper resolution of the pending issue; (2) whether remanding the case to the district court for consideration of the additional material would be contrary to the interests of justice and the efficient use of judicial resources; and (3) whether the appeal arose in the context of a habeas corpus action." *In re Capital Cities/ABC, Inc.'s Application for Access to Sealed Transcripts*, 913 F.2d 89, 97 (3d Cir. 1990). None of these factors weighs in favor of granting the motion to supplement. We therefore deny Fletcher's motion to supplement the record.