# United States Court of Appeals

## For the Eighth Circuit

_____

No. 20-2560

_____

James Michael Recca

*Plaintiff - Appellant*

v.

Omaha Police Department

*Defendant*

Randy Pignotti, individual capacity; Joseph Richter, (2019) individual capacity

*Defendants - Appellees*

Erik P. Forehead; Heidi L. Altic; Michael Oliver

*Defendant*s

Mike Nass, (1886) individual capacity

*Defendant - Appellee*

Actual K-9 Dog; Jane and John Does, any and all

*Defendant*s

Conrad Hansen, (2043) individual capacity

*Defendant - Appellee*

_____

Appeal from United States District Court
for the District of Nebraska - Omaha

_____

Submitted: April 27, 2021
Filed: June 4, 2021
[Unpublished]

_____

Before GRUENDER, MELLOY, and KELLY, Circuit Judges.

_____

PER CURIAM.

Nebraska inmate James Recca appeals following the district court's[1] adverse grant of summary judgment in his 42 U.S.C. § 1983 action.[2]

We conclude that the district court did not abuse its discretion in denying Recca's requests for appointment of counsel. *See Ward v. Smith*, 721 F.3d 940, 942 (8th Cir. 2013) (per curiam) (providing the standard of review). "There is no constitutional or statutory right to appointed counsel in civil cases." *Phillips v. Jasper Cty. Jail*, 437 F.3d 791, 794 (8th Cir. 2006). A district court "may request an attorney to represent" an indigent civil litigant, 28 U.S.C. § 1915(e)(1), but it has a "good deal of discretion" in deciding whether to do so, *Chambers v. Pennycook*, 641

_____

[1]The Honorable Richard G. Kopf, United States District Judge for the District of Nebraska.

[2]Although Recca's notice of appeal (NOA) was not received by the district court within the requisite time to appeal, we conclude it was timely based on Recca's certificate of service indicating he mailed the NOA within the time to appeal. *See Van Orman v. Purkett*, 43 F.3d 1201, 1202 (8th Cir. 1994) (giving appellant benefit of prison mailbox rule where certificate of service showed date prisoner deposited NOA in prison mail system).

F.3d 898, 909 (8th Cir. 2011). Relevant criteria for determining whether counsel should be requested include the factual and legal complexity of the case, the plaintiff's ability to investigate the facts and to present the claims, and the presence or absence of conflicting testimony. *Davis v. Scott*, 94 F.3d 444, 447 (8th Cir. 1996). The district court noted that it considered these factors each time it denied without prejudice Recca's requests for appointment of counsel. We find no abuse of discretion in these denials.

First, as for the complexity factors, the district court found, and Recca himself eventually asserted, that this was a "relatively straightforward excessive force case." We agree. *See, e.g.*, *Royal v. Doe*, 19 F. App'x 455, 456 (8th Cir. 2001) (per curiam); *Chambers*, 641 F.3d at 907-09; *Fletcher v. Grynkewicz*, 644 F. App'x 167, 170-71 (3d Cir. 2016).

Second, the record before the district court suggested Recca had the ability to investigate the facts. For instance, Recca attached a number of exhibits to his complaint, including police reports and medical records, to support his allegations. *See McNeil v. Lowney*, 831 F.2d 1368, 1372 (7th Cir. 1987). Additionally, in his second motion for appointment of counsel, Recca indicated that he was aware of and was pursuing discovery tools available to him (explicitly mentioning requests for the production of documents and interrogatories) to investigate additional facts.

Third, the record before the district court suggested Recca had the ability to present his claims, at least through the discovery and summary-judgment stages of the litigation. Recca's *pro se* filings are generally well-written. *See Ward*, 721 F.3d at 943; *Nachtigall v. Class*, 48 F.3d 1076, 1082 (8th Cir. 1995). His discovery responses, in which he denied various requests for admission and objected on relevancy grounds to a number of other discovery requests, reinforce the impression that he was "capable of self-representation" through these stages of the litigation. *See McCall v. Benson*, 114 F.3d 754, 756 (8th Cir. 1997). Further reinforcing this

impression, he moved for an extension of time under Federal Rule of Civil Procedure 6(b) to respond to the appellees' discovery requests, suggesting both an awareness of the procedural rules relevant to his case and an ability to comply with those rules to avoid inadvertently defaulting his claims. *See* Fed. R. Civ. P. 36(a)(3); *see also Sanders v. Holloway*, 95 F. App'x 842, 844 (8th Cir. 2004) (per curiam). Additionally, in his third request for appointment of counsel, Recca quoted from and cited recent authority bearing on the appointment-of-counsel question, suggesting his capacity for doing legal research to support his claims and arguments.

Fourth, as for the presence or absence of disputed testimony, while it seems that this case ultimately would have turned on resolving the dispute between Recca's version of events and the appellees' version of events as well as a credibility assessment of the parties had the case proceeded to trial, it had not yet progressed to that stage. Thus, this factor does not weigh heavily in the analysis. *See Johnson v. Williams*, 788 F.2d 1319, 1323 (8th Cir. 1986) ("[T]he weight to be given any one factor will vary with the case."); *Rager v. Augustine*, 760 F. App'x 947, 949-50 (11th Cir. 2019) (per curiam) (discounting this factor where "the district court dismissed [the] claims at the summary judgment and dismissal stages, before any trial skills were necessary").

As a prisoner, Recca understandably faced challenges representing himself, but "most indigent prisoners will face similar challenges." *See Patterson v. Kelley*, 902 F.3d 845, 850 (8th Cir. 2018).[3] On this record, we conclude that the district court did

---

[3]The dissent points out that Recca faced heightened challenges because in October 2019 (nearly two months after discovery had begun) he was transferred to the Community Correctional Center in Lincoln, Nebraska, where Recca reported he could access the law library for only two hours per week. We note that Recca had been transferred back to the Nebraska State Penitentiary more than a month before the appellees moved for summary judgment, where it does not appear that he faced such access restrictions. Additionally, he indicated that legal aid was available in the law library at the Nebraska State Penitentiary.

not abuse its "considerable discretion" in denying Recca's requests for appointment of counsel.  *See Ward*, 721 F.3d at 943.

Having carefully reviewed the record, we also conclude that summary judgment was proper.  *See Roberson v. Hayti Police Dep't*, 241 F.3d 992, 994 (8th Cir. 2001) (reviewing grant of summary judgment *de novo*).

Accordingly, we affirm.  *See* 8th Cir. R. 47B.

KELLY, Circuit Judge, dissenting.

I would reverse the district court's judgment and remand for appointment of counsel.  Though Recca's filings are generally well-written, the record nevertheless suggests he was unable to adequately investigate and present his claims.  For one, it appears that Recca was "confused as to proper procedure."  Wiggins v. Sargent, 753 F.2d 663, 668 (8th Cir. 1985); see also id. (explaining that "district court should not have denied the inmates' request for counsel" where they "present[ed] a colorable claim for relief" and it was "clear that they are indigent").  Significantly, he failed to respond to the defendants' statement of material facts, which the district court "considered an admission for purposes of deciding" the defendants' motion for summary judgment.  Recca v. Pignotti, 456 F. Supp. 3d 1154, 1159 (D. Neb. 2020) (citing Fed. R. Civ. P. 56(e)(2)).  Because Recca had until that point "diligently pursued his lawsuit to the best of his ability," Brown v. Frey, 806 F.2d 801, 804 (8th Cir. 1986), his failure to respond suggests a misunderstanding of the consequences of that failure and of summary judgment procedure generally. See Williams v. Carter, 10 F.3d 563, 566 (8th Cir. 1993) ("[Prisoner's] evident confusion with respect to his witness lists and compliance with . . . customary pre-trial procedures made it clear how difficult it was for him to proceed in this matter without counsel.").

Moreover, though he expressed a desire to do so in his repeated requests for counsel, it does not appear that Recca served the defendants with any discovery requests nor requested leave to take any depositions. Overall, his filings suggest that he either did not know that he *could* conduct discovery on his own, was logistically unable to do so, or did not understand that his claims hinged on more than just documentary evidence. See, e.g., Dist. Ct. Docket Nos. 44 (Feb. 24, 2020) & 37 (Dec. 26, 2019). No doubt contributing to Recca's struggles is the fact that he was transferred in October 2019 to the Community Correctional Center in Lincoln, where he could access the law library for only two hours per week. See Dist. Ct. Docket No. 30, at 1 (Oct. 10, 2019); see also Dist. Ct. Docket No. 41, at 1-2 (Feb. 13, 2020) (explaining that Recca was transferred to the "Diagnostic and Evaluation Center" and that defense counsel had been unable to reach him for nearly three weeks); cf. Rayes v. Johnson, 969 F.2d 700, 704 (8th Cir. 1992) (reversing for appointment of counsel where inmate "lack[ed] ready access to a law library," was "unclear about his right to obtain certain records," and was "hampered by the restraints of the institution as well as by his own lack of legal knowledge"). Thus, even if appointment of "counsel may have been unwarranted early in the proceedings, the record demonstrates that as the case progressed, [Recca] had difficulty" litigating his case, including "obtaining and presenting admissible evidence." Trotter v. Lawson, 636 F. App'x 371, 373 (8th Cir. 2016) (per curiam); see also Williams, 10 F.3d at 567 (emphasizing that "[w]hen a court has denied a motion for appointment of counsel, it should continue to be alert to the possibility that, because of procedural complexities or other reasons, later developments in the case may show . . . that counsel should be appointed"). These difficulties are further indication that Recca should have been appointed counsel.

Finally, this case involves a colorable and fact-intensive claim of excessive force against multiple defendants, as evidenced by the district court's 25-page order granting summary judgment on the defendants' version of the facts. In my view, the appointment of counsel was warranted to allow Recca to adequately develop the record before judgment issued. I respectfully dissent.

_____