Richard RAYES, Plaintiff–Appellant,

v.

Mark JOHNSON; Steven J. Simons; Melvin Rouf; Angelo S. Vinci; William Fairbanks; John Doe, Dr.; Dan Danaher, Dr., Defendants–Appellees.

No. 91–1350.

United States Court of Appeals, Eighth Circuit.

Submitted March 10, 1992.

Decided July 15, 1992.

---

Vincent Valentino, York, Neb., argued (Vincent Valentino and Chip Maxwell on the brief), for plaintiff-appellant.

Linda L. Willard, Lincoln, Neb., argued (Don Stenberg and Linda L. Willard on the brief), for defendants-appellees.

Before JOHN R. GIBSON, Circuit Judge, LAY, Senior Circuit Judge, and LOKEN, Circuit Judge.

JOHN R. GIBSON, Circuit Judge.

Richard Rayes appeals the district court's entry of judgment following a jury verdict in favor of defendants in Rayes' 42 U.S.C. § 1983 (1988) suit, which alleged that Nebraska state prison employees intentionally injured him and intentionally denied him medical care. Rayes challenges the district court's denial of his request for substitute counsel following the withdrawal of his first attorney before the trial. We hold that the district court abused its discretion in denying substitute counsel, and remand with directions to appoint counsel and grant Rayes a new trial.

Rayes, an inmate in the Nebraska State Penitentiary, alleges that prison guards slammed a steel door on his hand, breaking a finger, that medical personnel later refused to treat him, and that guards confiscated his finger splints on three separate occasions, thereby interfering with his medical treatment and causing him more pain.

Rayes filed a pro se complaint with the district court, alleging that two guards slammed an outer door shut on his arms, which were stuck through the food slot of the inner sliding door. A magistrate judge initially held that the complaint did not allege facts with sufficient particularity "to give rise to an inference of anything other than negligence," which would not support an action under section 1983 or the Eighth Amendment. *Rayes v. Johnson*, CV87–L–94, slip op. at 1–2 (D.Neb. Mar. 5, 1987). (magistrate's memorandum and order).

Although holding that Rayes had failed to state a claim upon which relief could be granted, the magistrate judge granted Rayes the opportunity to file an amended complaint that would more clearly state the nature of his claims. *Id.* at 2. Rayes filed a second pleading in which he stated that the defendants were "aware of thier [sic] action." The district court held that the amendment still did not properly state a claim under section 1983, but determined that appointment of an attorney would be helpful to both the plaintiff and the court, and appointed S. Nicholas Boggy of Fremont, Nebraska, to represent Rayes. *Rayes v. Johnson*, CV87–L–94, slip op. at 1–2 (D.Neb. May 11, 1987).

Boggy soon filed an amended complaint alleging that the guards "intentional[ly] and malicious[ly]" slammed the door on Rayes' left hand, causing him to suffer a broken finger and extreme pain. The amended complaint also alleged that Rayes was denied medical care for his broken finger for two days, and that guards confiscated Rayes' splint on three separate occasions. The amended complaint requested compensatory and punitive damages and attorney's fees.

The defendants denied the allegations and the case proceeded through discovery. In October 1989, Boggy filed a motion to withdraw as Rayes' attorney. He also filed a supporting affidavit which stated that Rayes' and his differences about the case "cannot be resolved" and that the differences were such that "Mr. Rayes has no confidence in [Boggy] and the manner in which the case is being handled and the attorney-client relationship has deteriorated to the point where [Boggy's] withdrawal ... is proper and necessary." The affidavit did not state reasons for the differences between Boggy and Rayes because Boggy did not wish those reasons to be "construed in such a manner as to prejudice Mr. Rayes' case."

The magistrate judge granted Boggy's motion to withdraw and gave Rayes 30 days, which he later extended to 60, to retain an attorney or to inform the court that he would proceed without counsel. Rayes contacted three attorneys, but was unable to find someone willing to represent him. In December 1989, he consequently informed the court that he would represent himself. Twice before trial, Rayes requested substitute counsel; he was refused both times.

After receiving various continuances, Rayes proceeded to trial, pro se, in September 1990. The jury found in favor of the defendants, and the district court denied a motion to set aside the verdict. Rayes filed his notice of appeal, and we appointed counsel for the appeal.

Rayes' only argument on appeal is that he was improperly denied substitute counsel. He alleges that the district court abused its discretion and that the denial violated his "Fifth Amendment due process right to a fair trial."

The State of Nebraska argues that the district court did not abuse its discretion, that there is no constitutional or statutory right to court-appointed counsel in a civil

action, and that Rayes' case was not prejudiced by his lack of counsel. The State contends that Rayes "fired" Boggy, and that under such circumstances, substitute counsel should not be permitted.

■ The State correctly asserts that indigent litigants should not be permitted to "shop around" for appointed counsel or to discharge such counsel merely to accommodate a "preference" for another attorney.

At trial, Rayes twice stated that he "fired"[1] Boggy and that this occurred because of "several disagreements" between the two. In his affidavit, Boggy stated that their "differences cannot be resolved" and that Rayes has no "confidence in [Boggy] and the manner in which the case is being handled...." Boggy's characterization of the situation is supported by Rayes' January 1990 filing with the district court in which Rayes stated that Boggy "did not obtain *pertinate* [sic] discovery papers held by Nebraska Correctional Services ... nor did he take depositions from Plaintiffs wittness [sic]." (Emphasis in original).

The affidavit and the court filing support the conclusion that Boggy's withdrawal resulted from serious and apparently irreconcilable differences between attorney and client about how the case should be handled. In any event, the district court made no finding that Rayes simply "fired" Boggy, and we are unwilling to adopt such a conclusion based on the record before us. Boggy's withdrawal came on his own motion.

■ The issue before us is simply whether the district court abused its discretion by failing to grant Rayes' requests for a new attorney. Although a civil litigant has no constitutional or statutory right to a court-appointed attorney, *Wiggins v. Sargent*, 753 F.2d 663, 668 (8th Cir.1985), the district court may make such an appointment at its discretion. *Id.* *See also* 28 U.S.C.

---

1. Rayes stated:
   I fired him 31 days before the pretrial conference because within 30 days of the pretrial conference you cannot, according to their local rules here, introduce any more evidence.

Later, during an argument to the court, Rayes stated: "Mr. Bogey, [sic] who was ... representing me at the time and has been fired by myself because of several disagreements...."

§ 1915(d) (1988).[2] The district court may also appoint substitute counsel when the circumstances so warrant. *Lewis v. Lane*, 816 F.2d 1165, 1169 (7th Cir.1987).

In *In re Lane*, 801 F.2d 1040 (8th Cir.1986), we identified the factors that the district court must consider when faced with a request for court-appointed counsel. The appointment of counsel " 'should be given serious consideration ... if the plaintiff has not alleged a frivolous or malicious claim' " and the pleadings state a prima facie case. *Id.* at 1043 (quoting *Nelson v. Redfield Lithograph Printing*, 728 F.2d 1003, 1005 (8th Cir.1984)). The court must also ascertain the plaintiff's need for an attorney and his inability to obtain counsel on his own. *Id.* The inquiry regarding the plaintiff's need should focus on several factors, including the likelihood that the plaintiff and the court will benefit from the assistance of counsel, the factual complexity of the case, the plaintiff's ability to investigate the facts and present his claim, the existence of conflicting testimony, and the complexity of the legal issues. *Id.* at 1043–44 (citing *Redfield Lithograph Printing*, 728 F.2d at 1005, and *Johnson v. Williams*, 788 F.2d 1319, 1322–23 (8th Cir. 1986)). These factors do not comprise an exclusive checklist. *Id.* at 1044. *See also Sours v. Norris*, 782 F.2d 106, 107 (8th Cir.1986) (per curiam) (discussion of factors); *White v. Walsh*, 649 F.2d 560, 563 (8th Cir.1981) (same).

After reviewing the record in light of these factors, we conclude that the district court abused its discretion in failing to appoint substitute counsel. *See Johnson*, 788 F.2d at 1323 (district court abused discretion by failing to appoint counsel when circumstances warranted appointment); *Wiggins*, 753 F.2d at 668 (same). The circumstances present here demonstrate that the appointment of counsel was critical not only to Rayes' efforts to press his claims, but also to the jury's and the court's ability to fairly determine those claims.

Although Rayes had great difficulty articulating his claims pro se, it is evident that his claims were not frivolous or malicious. After Boggy filed a first and second amended complaint, the defendants made no motion to dismiss. At trial, the district court twice denied the defendants' motions for directed verdicts as to four of the six defendants. We therefore see no basis for concluding that Rayes' claims were frivolous or malicious, *see Denton v. Hernandez*, —— U.S. ——, 112 S.Ct. 1728, 1733–34, 118 L.Ed.2d 340 (1992), or that he failed to state a prima facie case. The district court initially recognized the desirability of appointing counsel in this case after Rayes' pro se efforts at pleading ran aground on the shoals created by the requirements of pleading a constitutional violation. After withdrawal of the appointed counsel and Rayes' request for a successor, the court on two occasions, without explanation that appears in the record, denied the request. The court's earlier determination that counsel was necessary raises a strong question about these later refusals.

The record clearly substantiates the district court's initial observation that the appointment of counsel would be helpful. Following Boggy's appointment, the court received a properly drafted amended complaint and a second amended complaint. Boggy also conducted discovery. Following Boggy's withdrawal, however, Rayes was once again severely hampered in his ability to press his claims. As an inmate in the prison's "adjustment center," Rayes was not allowed to use a typewriter, computer, telephone,[3] or photocopying machine. He also was forbidden access to the prison's law library and could obtain legal materials only by written requests that often took several days or longer to fulfill.

---

2. Section 1915, which governs in forma pauperis proceedings, states in subsection (d):
   The court may request an attorney to represent any such person unable to employ counsel and may dismiss the case if the allegation of poverty is untrue, or if satisfied that the action is frivolous or malicious.

3. One exception existed to the general prohibition on telephone calls to attorneys: Rayes could use the phone to contact a lawyer who was already representing him in an action in which an appearance was scheduled within two weeks.

Rayes was severely disadvantaged in his efforts to conduct discovery. When he filed his request for access to prison files still held by Boggy, the magistrate summarily denied the request because it was "not a proper motion under Rule 37, Fed. R.Civ.P." Rayes eventually obtained the files, but not until 18 days before the scheduled pretrial conference (which was later postponed).

Rayes also sought "shakedown reports"—pink slips given to a prisoner stating what contraband had been removed from a prisoner's cell during a "shakedown"—but apparently believed that he was prevented from obtaining them by Neb.Rev.Stat. § 83–178(2) (1987), which restricts inmates' access to files maintained by correctional agencies. Rayes contended that the pink slips would verify that finger splints were confiscated from his cell. At one time Rayes allegedly possessed the pink slips, but he claimed they were removed during subsequent "shakedowns." The State of Nebraska stated that it no longer had any record of what was taken during these shakedowns and that any contraband removed from Rayes' cell would have been stored in a property box. It cannot be discerned from the record whether Rayes ever got access to this box. On the first day of trial, the State's attorney stated that she believed the box had been turned over that morning to the plaintiff. Rayes stated, however, that at the arranged time, "the property control man wasn't there" and that he would "supposedly" get the box when he returned to the prison. Nothing appears in the transcript regarding whether the box was finally turned over to Rayes or the outcome of his search.

At trial, Rayes examined and cross-examined witnesses, but failed to offer any testimony or other evidence against two of the named defendants. Rayes had alleged in his pretrial pleadings that these two guards had confiscated his finger splints. Because he offered no evidence against them, the district court dismissed them from the case.

It is apparent from the record that the demands of self-representation exceeded Rayes' abilities. Lacking ready access to a law library, unclear about his right to obtain certain records, and hampered by the restraints of the institution as well as by his own lack of legal knowledge, Rayes was ill-equipped to litigate his claims. The factual and legal issues were sufficiently complex that Rayes, in his pro se complaints, could not articulate a proper claim. The case also featured sharply conflicting testimony. The guards denied intentionally slamming the door on Rayes' hand or even accidentally shutting the door on it. The medical personnel testified that Rayes was treated promptly for his injuries and that his missing splints were replaced.

In essence, the case hinged on determinations of witness credibility, and Rayes' lack of courtroom skills prevented the adequate examination of witnesses. For example, Rayes quickly abandoned his cross-examination of one of the guards who allegedly slammed the door, stating: "There is no way I can make you remember [the incident]. No further questions of this witness, Your Honor."

We are satisfied that Rayes alleged a colorable claim and that the circumstances of his confinement and his own lack of legal knowledge prevented him from adequately investigating and presenting his claims. The difficulties Rayes encountered at trial but confirm that he was totally inadequate to try a case that possessed some complexity and which was not frivolous. The appointment of substitute counsel would have been of benefit to the court and the plaintiff. We also observe that Rayes demonstrated his inability to retain an attorney. See Nelson, 728 F.2d at 1005 (court should satisfy itself that plaintiff has attempted to retain counsel and has been unsuccessful). After Boggy withdrew, Rayes wrote letters to three attorneys requesting representation. All three turned him down.

The district court may have had reason to deny Rayes' request for subsequent counsel, but no explanation appears in the record. The request was summarily denied

twice.  In *Slaughter v. City of Maplewood,* 731 F.2d 587 (8th Cir.1984), we emphasized that the district court must state reasons so that we can determine whether it exercised "a reasoned and well-informed judgment" regarding the request for court-appointed counsel.  *Id.* at 589.

Under the totality of these circumstances, we conclude that the district court abused its discretion in denying Rayes' requests for substitute counsel.  We therefore reverse and remand with directions to appoint counsel and grant a new trial.