# United States Court of Appeals

### For the Eighth Circuit

———————————————

No. 18-1370

———————————————

Husein Cejvanovic

*Plaintiff - Appellant*

v.

Nick Ludwick, Warden, et al.

*Defendants - Appellees*

————————

Appeal from United States District Court
for the Southern District of Iowa - Des Moines

————————

Submitted: January 16, 2019
Filed: May 3, 2019

————————

Before LOKEN, GRASZ, and STRAS, Circuit Judges.

————————

LOKEN, Circuit Judge.

Husein Cejvanovic, while serving a life sentence at the Iowa State Penitentiary ("ISP"), suffered a serious hip injury when assaulted by a fellow inmate. Following hip surgery, Cejvanovic brought this 42 U.S.C. § 1983 action alleging that five ISP employees were deliberately indifferent to his serious medical needs. Defendants moved for summary judgment, and Cejvanovic filed an initial response. The district

court[1] appointed counsel who investigated the claims and reported to the court "that no Amended Answer to the Defendant's Motion for Summary Judgment can be submitted without violation of Federal Rules of Civil Procedure, Rule 11." The district court then granted summary judgment dismissing the claims. Cejvanovic appeals, arguing that the court abused its discretion in not considering whether to appoint substitute counsel and that defendants were not entitled to summary judgment. We affirm.

## I.

On December 9, 2015, the day Cejvanovic was assaulted, he was given pain medication and ordered to bed rest pending an x-ray that revealed a fractured hip. The next day, he was transferred to the University of Iowa Hospitals and Clinics ("UIHC"), where he was evaluated and surgery was performed on December 11. He was released to ISP some days later but returned to UIHC in the following months for follow-up visits with the UIHC medical staff in charge of his treatment.

Cejvanovic filed a *pro se* § 1983 Complaint on September 26, 2016. Regarding treatment of his hip injury, the only claim at issue on appeal, Cejvanovic alleged:

> I'm still in a great deal of pain as my hip surgery didn't work out right. The doctor at UIHC says the hip joint they used was defective and needs to be replaced, but, ISP will not send me back to have the hip joint replaced. ISP has taken away the walker I had been using then they took away the walking cane that they had given for a few weeks. I cannot walk or stand correctly to this day and I'm always in pain.

---

[1]The Honorable Stephanie M. Rose, United States District Judge for the Southern District of Iowa.

The Complaint named as defendants ISP supervisors and medical staff but no member of the treating medical staff at UIHC. The district court issued an Initial Review Order concluding that Cejvanovic "raised plausible claims," ordering defendants to respond to the Complaint, and denying Cejvanovic's request for appointment of counsel without prejudice to renewing the motion if circumstances changed.

After answering the Complaint, the ISP defendants filed a motion for summary judgment on April 10, 2017. In support, they submitted the Affidavit of ISP physician Stephen Sparks, ISP records reflecting treatment of Cejvanovic's hip injury, and UIHC medical records regarding the December 11 surgery and Cejvanovic's follow-up visits to UIHC on December 28, 2015, February 5, 2016, and May 27, 2016. On the first visit, the UIHC report noted: "Incision healed well without difficulty. No other concerns . . . . The patient is in no distress." On the second visit, the report noted: "Patient has minimal tenderness with hip palpation, has limited hip ROM on exam. He is ambulating with antalgic gait . . . . Continue OTC pain medications, hip is healing well. Full weight-bearing, may require assisted device for ambulation. Return to clinic in 3 months for repeat x-rays." On the third visit, the UIHC report noted: "He reports hip and groin pain which is consistent with his baseline. He is walking but feels that he is unsteady and would benefit from a cane. Pain is controlled with OTC medications . . . . Continue weight bearing as tolerated. Refer for depth shoes for peripheral neuropathy. Patient may benefit from a cane for stability while ambulating. Follow up in 6 months for repeat xrays."

The ISP records record that Cejvanovic was provided a special pair of New Balance shoes in July and work boots in December 2016. In July, ISP physician Todd Jacks reported that Cejvanovic "has asked about cane in past, but I am concerned about how a cane might be used as a weapon." He noted that Cejvanovic would "like [work classification] changed so he can go back to work." Paragraph 15 of Dr. Sparks's Affidavit concluded, "If there were questions with regard to his hip injury -- he would again be referred to UIHC for further evaluation and treatment."

On April 24, 2017, Cejvanovic, whose native language is Bosnian, filed a six page response to defendants' motion, hand-written in English. He asserted that his hip injury "requires long term after care. And what is being done by the Defendants is completely inadequate." "The shoes were given but not the cane," even though "numerous inmates all throughout the I.D.O.C. system" have canes. Cejvanovic renewed his request for appointment of counsel, noting his limited ability to understand English. The district court then appointed Cejvanovic counsel and an interpreter and granted counsel multiple extensions to submit a further response to defendants' summary judgment motion.

On September 26, 2017, appointed counsel filed a "Report of Counsel that No Amended Answer can be filed without violating Federal Rule of Civil Procedure, Rule 11." After summarizing his investigation in detail, counsel expressed his professional opinion -

> that while the medical treatment given [Cejvanovic] has not fully cured or alleviated the pain and suffering, and that he disagrees with the methods of treatment provided to him, that the failure of the Defendants to either fully cure the injuries or provide him his preference of medical treatment does not rise to the level of deliberate indifference or a violation of his civil rights.

Counsel noted that Cejvanovic "does not accept the analysis and opinion of Counsel" and "refuses to voluntarily withdraw or dismiss the Pro-Se Complaint." Counsel then stated "that no Amended Answer to the Motion for Summary Judgment can be filed by the Undersigned," and that counsel "awaits further instruction from the Court."

On November 13, Cejvanovic filed a two-page letter to "Judge Stephanie M. Rose," hand-written in Bosnian. On November 16, appointed counsel filed a response to Cejvanovic's letter. Counsel advised that Cejvanovic had not provided a copy of his letter to counsel or the interpreter, but "I forwarded a copy [to the interpreter] by

-4-

e-mail, and we reviewed the gist of the Bosnian text." Counsel concluded, "[a]t this time, based upon the oral review of [Cejvanovic's letter], I do not have anything to change, add or expand in relation to the last filing I have made of record." Cejvanovic did not respond to counsel's filing. On January 16, 2018, the district court granted defendants' motion for summary judgment.

## II.

**A.** Cejvanovic first argues the district court abused its discretion by failing to consider his request for substitute appointed counsel, relying primarily on our decision in Rayes v. Johnson, 969 F.2d 700 (8th Cir. 1992), where we held that the district court abused its discretion in denying an inmate's repeated requests for substitute counsel after appointed counsel withdrew, leaving the inmate to try his colorable but complex claims *pro se*. But in this case, appointed counsel did not withdraw, and *there was no request for substitute counsel*. In response to defendants' motion for summary judgment, Cejvanovic filed a lengthy response, in English, and requested appointment of counsel. The court appointed counsel and an interpreter. After substantial investigation, including a meeting with Cejvanovic and the interpreter at ISP, counsel advised the court that he could not file an amended response without violating Rule 11. Cejvanovic responded with a two-page letter to the court in Bosnian. Counsel filed a response advising the court that he had reviewed the "gist" of that letter with the interpreter and it did not change counsel's opinion regarding an amended response. Two months later, having heard nothing further from Cejvanovic, the district court granted the motion for summary judgment.

Cejvanovic asserts on appeal that his letter written in Bosnian included a request for new counsel. He moves to supplement the record on appeal with a translation of the letter dated April 17, 2018, by a translator other than the interpreter appointed by the district court. We deny the motion. This translation was not available to the district court in considering defendants' motion for summary

judgment. When it denied that motion, the court knew: (i) Cejvanovic filed a lengthy *pro se* Complaint in English; (ii) defendants filed a well-supported motion for summary judgment; (iii) Cejvanovic filed an initial response in English along with a motion for appointment of counsel; (iv) appointed counsel after substantial investigation reported he could not file an amended response without violating Rule 11, but Cejvanovic disagreed with counsel's opinion that defendants had not been deliberately indifferent to his serious medical needs; (v) seven weeks later, Cejvanovic filed a two-page letter in Bosnian without having it translated either by the court-appointed interpreter or, as he had done before, by a fellow inmate; (vi) appointed counsel promptly advised that he reviewed the translated letter with the interpreter and it did not change counsel's opinion; and (vii) Cejvanovic did not further communicate with the court or supplement his initial response to defendants' motion. The court received no request for substitute counsel and had no basis in the summary judgment record to suspect that appointment of new counsel would affect the court's decision. Cf. Taylor v. Dickel, 293 F.3d 427, 430-31 & n.8 (8th Cir. 2002) (denial of substitute counsel upheld because any error harmless). There was no abuse of discretion.

**B.** Cejvanovic next argues the district court erred in granting defendants' motion for summary judgment. "To prevail on an Eighth Amendment claim of deliberate indifference to serious medical needs, [Cejvanovic] must prove that he suffered from one or more objectively serious medical needs, and that prison officials actually knew of but deliberately disregarded those needs." Roberts v. Kopel, 917 F.3d 1039, 1042 (8th Cir. 2019) (quotation omitted). Defendants concede the fractured hip he suffered in the December 2015 assault resulted in a serious medical need. Thus, to avoid summary judgment, Cejvanovic must establish that the defendant prison supervisors and medical staff were deliberately indifferent to this serious medical need, a mental state "akin to criminal negligence." Id. (quotation omitted).

Cejvanovic first argues that his claim should succeed on the facts presented by defendants because, when Dr. Jacks refused to allow Cejvanovic a cane because it

might be used as a weapon, Jacks interfered with treatment recommended by Cejvanovic's treating UIHC physician. This overstates the UIHC record, which reported in May 2016 only that "Patient may benefit from cane for stability while ambulating." The record reflects that, after the surgery, Cejvanovic was increasingly ambulatory, requested fewer work restrictions so he could return to work, and was provided New Balance shoes and then new work boots to increase his stability. In Barnes v. Dorsey, we observed that not providing an inmate a cane that could be used as a weapon was "prudent." 480 F.2d 1057, 1061 (8th Cir. 1973). This treatment complaint did not establish deliberate indifference.

More generally, Cejvanovic argues the district court erred by failing to consider his complaints that defendants denied him ambulatory assistance and failed to remedy post-surgery complications, as alleged in the Complaint and his initial response to the summary judgment motion. We disagree. Cejvanovic submitted no evidence or affidavit supporting allegations in his unverified Complaint that "[t]he doctor at UIHC says the hip joint they used was defective and needs to be replaced," and that "ISP has taken away the walker I had been using." The allegation in his initial response that "what is being done by the Defendants is completely inadequate" is the kind of "mere disagreement with treatment decisions [that] does not rise to the level of a constitutional violation." Jolly v. Knudsen, 205 F.3d 1094, 1096 (8th Cir. 2000) (quotation omitted). As we explained in Dulany v. Carnahan, "[i]n the face of medical records indicating that treatment was provided and physician affidavits indicating that the care provided was adequate, an inmate cannot create a question of fact by merely stating that [he] did not feel [he] received adequate treatment." 132 F.3d 1234, 1240 (8th Cir. 1997).

Reviewing the grant of summary judgment *de novo*, we agree with the district court that "[t]here is no evidence in the record that [Dr. Sparks] or any other medical

provider or prison staff provided substandard care, and no evidence that the Defendants ever acted in deliberate disregard of a serious medical need."

For the foregoing reasons, the judgment of the district court is affirmed.

_____