# United States Court of Appeals
### For the Eighth Circuit

_____

No. 19-1312
_____

Warren D. Crozier, for minor A.C.; Paula M. Crozier, for minor A.C.

*Plaintiffs - Appellants*

v.

Westside Community School District; Westside Middle School; Elizabeth Meyers, English Teacher; Russell Olsen, Principal Westside Middle School; Enid Schonewise, Assistant Superintendent; Blane McCann, Superintendent

*Defendants - Appellees*
_____

Appeal from United States District Court
for the District of Nebraska - Omaha
_____

Submitted: May 14, 2020
Filed: September 2, 2020
[Published]
_____

Before COLLOTON, WOLLMAN, and BENTON, Circuit Judges.
_____

PER CURIAM.

On behalf of A.C., their minor child, Warren D. and Paula M. Crozier completed the *pro se* "Complaint for Violation of Civil Rights" form in the district court. They sued A.C.'s teacher, her school, the school district, and three

administrators for allegedly violating A.C.'s rights under the First Amendment and the Equal Protection Clause. The district court ruled that the Croziers could not represent A.C.'s interests *pro se*. The court dismissed the action without prejudice. The Croziers were unable to find counsel, refiled, and requested appointed counsel. The district court rejected the request because the claims were "not likely to be of substance," again dismissing the action without prejudice. The Croziers appeal. We affirm the district court's ruling that the parents may not represent A.C. *pro se*, but we reverse and remand with directions to request counsel to represent the plaintiffs.

I.

When reviewing an order dismissing a *pro se* complaint, "the complaint is to be liberally construed, the facts taken in the light most favorable to the plaintiff, and all well-pleaded allegations considered to be true." *Martin-Trigona v. Stewart*, 691 F.2d 856, 858 (8th Cir. 1982) (per curiam).

In the fall of 2016, A.C. was a student at Westside Middle School in Omaha, Nebraska. The complaint alleges that a teacher assigned A.C.'s eighth-grade class to watch a video about athletes kneeling during the national anthem. The week before, it is alleged, there were "violent race riots" in North Carolina that "were spurred by the shooting of an unarmed black man by a police officer." In that context, during a "critical thinking" discussion, the teacher called on A.C. to share her ideas. A.C. demurred, but the teacher insisted that A.C. answer.

A.C. then expressed her view that "kneeling was disrespectful to law enforcement and military, and questioned that this violence could have stemmed from music lyrics that said such things as 'F-the Police, and the use of the N-word.'" (A.C. employed euphemisms in her comments and did not use profanity or the actual "N-word.") When the teacher demanded to know where A.C. obtained this information, she answered, "from the media." To explain further, A.C. shared an example from

the previous school year when she overheard a conversation between two seventh-grade students, one black and one white; the white student asked why he couldn't say the "N-word" when the black student could. The teacher then interrupted A.C. and directed her to stop speaking. The Croziers allege that if A.C. had been permitted to finish, she would have expressed her view that no one should use the "N-word."

A.C. stayed home from school the next day due to illness. The teacher allegedly "told several class periods worth of students that A.C. was a racist." The Croziers allege that the teacher "lied to intentionally defame and label A.C. as a 'racist who said the N-word.'" They assert that the teacher, in speaking to other students, "made the supposition that A.C. was home that day due to suspension," even though she knew that A.C. was home sick. The Croziers allege that the teacher admitted branding A.C. a racist: when A.C.'s mother later told the teacher that it was "entirely unfair that [she] labeled A.C. a racist," the teacher "rolled her eyes and smugly responded, 'I do not believe that to be unfair.'"

As a result of this alleged retaliation, the Croziers claim, A.C. was taunted by other students who "heard what [she] said," and A.C. feared for her safety if she returned to school. Some students sent A.C. text messages asking if she was suspended. When she returned to school, some called out to her in the halls. To avoid "sneering and bullying," she removed herself to the Dean's office to do schoolwork, and began eating lunch in bathroom stalls to avoid anyone who could harm her. She allegedly suffered emotional distress, anxiety, and depressive thoughts.

After meeting with the principal and assistant superintendent, the Croziers removed A.C. from school and began schooling her at home. A month after the classroom discussion, A.C. called a suicide hotline, described how the teacher's actions had caused her harm, and said that she wanted to kill herself. She twice

attempted suicide. A.C. entered therapy and for a time was under 24-hour suicide watch. The Croziers later transferred A.C. to a new school.

The Croziers contacted eight lawyers about A.C.'s case but were unable to retain one. On behalf of A.C., they filed the *pro se* lawsuit under 42 U.S.C. § 1983. The Croziers alleged injuries to A.C., and also claimed that due to A.C.'s depression and anxiety, they themselves "sustained physical, monetary and emotional damages as well through financial losses in business, employment and home."

The court ruled that the Croziers could not serve *pro se* as A.C.'s representatives and lacked standing "to bring individual § 1983 claims that only derive from alleged violations of their minor child's constitutional rights." *Crozier v. Westside Cmty. Sch. Dist.*, No. 8:18CV438, 2018 WL 5298744, at *4 (D. Neb. Oct. 25, 2018) (*Crozier I*). The court dismissed the action without prejudice. The court stated that if the Croziers could not find counsel, they could refile and request a court-appointed lawyer.

The Croziers contacted twenty-seven more lawyers, Nebraska Legal Aid, and a legal clinic at a local law school, without success. The lawyers gave various reasons for declining, including lack of qualifications for the case, workload, lack of interest in the case, and conflicts of interest. The Croziers refiled, requesting court-appointed counsel. The district court refused because (1) the § 1983 claims were "not likely to be of substance," and (2) A.C. lacked standing for declaratory and injunctive relief, as she was no longer a student at Westside. *Crozier v. Westside Cmty. Sch. Dist.*, No. 8:18CV541, 2019 WL 249399, at *8-9 (D. Neb. Jan. 17, 2019) (*Crozier II*). The court again dismissed without prejudice. The Croziers appeal, arguing (1) they should be allowed to proceed *pro se* on behalf of their minor child; and (2) the district court abused its discretion by not appointing counsel.

II.

Non-attorney parents cannot litigate *pro se* on behalf of their minor children, even if the minors cannot then bring the claim themselves. *See Myers v. Loudoun Cty. Pub. Schs.*, 418 F.3d 395, 401 (4th Cir. 2005) (collecting cases) ("We therefore join the vast majority of our sister circuits in holding that non-attorney parents generally may not litigate the claims of their minor children in federal court."); *United States v. Agofsky*, 20 F.3d 866, 872 (8th Cir. 1994) (observing in a criminal case, a non-lawyer parent "lacked authority to act as an attorney before the court" on behalf of her minor children). *See also Udoh v. Minn. Dep't Of Human Servs.*, 735 F. App'x. 906, 907 (8th Cir. 2018) (per curiam) (affirming dismissal without prejudice of constitutional claims plaintiffs "attempted to assert on behalf of their minor daughters."); *Buckley v. Dowdle*, No. 08-1005, 2009 WL 750122, at \*1 (8th Cir. Mar. 24, 2009) (per curiam) (same for minor daughter); *Bower v. Springfield R-12 Sch. Dist.*, 263 F. App'x 542, 543 (8th Cir. 2008) (per curiam) (same for minor children).

True, the rule prohibiting parents from representing their children may not be "ironclad." *See Adams ex rel. D.J.W. v. Astrue*, 659 F.3d 1297, 1300 (10th Cir. 2011). Parents may litigate *pro se* if their minor child is denied social security benefits. *Id.*; *Machadio v. Apfel*, 276 F.3d 103, 107 (2d Cir. 2002); *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000). *Cf. Winkelman ex rel. Winkelmann v. Parma City Sch. Dist.*, 550 U.S. 516, 535 (2007) (concluding that the Court "need not reach petitioners' alternative argument, which concerns whether [the Individuals with Disabilities Education Act] entitles parents to litigate their child's claims *pro se*."). However, "no comparable exception has ever been recognized for a lawsuit based on § 1983 or general state tort law." *Elustra v. Mineo*, 595 F.3d 699, 705 (7th Cir. 2010).

The Croziers argue that the district court's enforcement of the rule "prevents indigent parents from exercising their child's fundamental right to access the courts."

We review this question of law de novo. *United States v. Galloway*, 976 F.2d 414, 419 (8th Cir. 1992) (en banc).

"[T]he right of access to federal courts is not a free-floating right, but rather is subject to Congress' Article III power to set limits on federal jurisdiction." *Murray v. Dosal*, 150 F.3d 814, 817 (8th Cir. 1998) (per curiam) (quoting *Roller v. Gunn*, 107 F.3d 227, 231 (4th Cir. 1997)). Congress has prescribed that in federal court, litigants may plead and conduct "their own cases personally." 28 U.S.C. § 1654. As authorized by Congress, A.C.'s capacity to sue in federal court is determined by the law of her domicile. *See* Fed. R. Civ. P. 17(b)(1); 28 U.S.C. § 2072 (authorizing the Supreme Court to "prescribe general rules of practice and procedure" for federal courts, which nullify any conflicting laws); *Hentif v. Obama*, 733 F.3d 1243, 1246 (D.C. Cir. 2013) ("A rule of procedure, 'if within the power delegated to [the Supreme Court], has the force of a federal statute.'") (quoting *Sibbach v. Wilson & Co.*, 312 U.S. 1, 13 (1941)).

Under Nebraska law, minors "lack the legal authority to sue." *Carlos H. v. Lindsay M.*, 815 N.W.2d 168, 173 (Neb. 2012). In Nebraska, if a plaintiff is a minor at the time a cause of action accrues, the statute of limitations is tolled until plaintiff reaches the age of 21. Neb. Rev. Stat. § 25-213. *Cf. Doe v. McCoy*, 899 N.W.2d 899, 901 (Neb. 2017) (acknowledging the tolling of an action for tort damages occurring when plaintiff was a minor). "Section 1983 claims are governed by the personal injury statute of limitations of the state where the claim arose," and the "use of a state's statute of limitations also requires the use of its tolling statutes and the operation thereof is governed by state law." *Bridgeman v. Neb. State Pen*, 849 F.2d 1076, 1077-78 (8th Cir. 1988), *agreed with in Bauers v. City of Lincoln*, 514 N.W.2d 625, 634 (Neb. 1994). Under Nebraska's tolling provision, A.C.'s cause of action survives until four years after she reaches 21. Because A.C. has a "reasonably adequate opportunity" to sue, the district court's order does not violate her fundamental right to access the courts. *See Higgins v. Carpenter*, 258 F.3d 797, 799 (8th Cir. 2001) (per curiam) (holding that if plaintiffs have a "reasonably adequate

opportunity" to pursue valid lawsuits, their fundamental right to access courts is not impinged) (citing *Lewis v. Casey*, 518 U.S. 343, 356 (1996)).

The Croziers insist they should be allowed to sue on behalf of A.C. because their interests are "closely intertwined" and "aligned with" A.C.'s, like the parents appealing denial of their child's social security benefits. To the contrary, a § 1983 case is unlike a social security appeal, where the rights of minors "can be adequately protected without legal counsel—the proceedings essentially involve the review of an administrative record." *Harris*, 209 F.3d at 417 (distinguishing social security proceedings from others applying the general rule). *See Loundoun Cty. Pub. Schs.*, 418 F.3d at 401 n.7 (holding that the general rule prohibiting non-attorney parents from litigating *pro se* on behalf of their minor children applies in a § 1983 case but distinguishing the "unique facts involved in an SSI appeal").

The Croziers argue that prohibiting them from litigating A.C.'s claims violates their fundamental right "to control their child's legal claims." Unlike their other arguments, this argument was not raised or addressed in the district court. It is therefore waived. *See Partridge v. City of Benton*, 929 F.3d 562, 568 (8th Cir. 2019) (failure to present a due-process claim in the district court forecloses consideration on appeal).

The district court properly ruled that the Croziers cannot litigate *pro se* on behalf of A.C.

## III.

The Croziers next argue that the district court abused its discretion by denying their motion for appointed counsel. They contend that the court mistakenly considered a factor that is irrelevant to an indigent plaintiff's need for counsel.

-7-

According to the Croziers, the court improperly denied the motion because they were unlikely to succeed on the merits of their claim.

A.

"Indigent civil litigants do not have a constitutional or statutory right to appointed counsel." *Davis v. Scott*, 94 F.3d 444, 447 (8th Cir. 1996) (quoting *Edgington v. Mo. Dep't of Corr.*, 52 F.3d 777, 780 (8th Cir. 1995)). "Rather, when an indigent [plaintiff] has pleaded a nonfrivolous cause of action, a court 'may' appoint counsel." *Phillips v. Jasper Cty. Jail*, 437 F.3d 791, 794 (8th Cir. 2006). The authority to do so is set forth in 28 § U.S.C. 1915(e)(1), which provides that "[t]he court may request an attorney to represent any person unable to afford counsel."[1]

The Croziers believe that the district court mistakenly relied "entirely" on the factors in *Hale v. North Little Rock Housing Authority*, 720 F.2d 996 (8th Cir. 1983) (per curiam), a case arising under Title VII of the Civil Rights Act. *Hale* said that "[i]n ruling upon a motion for appointment of counsel, the district court may consider the merits of the claim, the plaintiff's efforts to obtain counsel, and the plaintiff's financial ability to retain an attorney." *Id*. at 998. The district court did discuss each of the *Hale* factors. The court concluded that although the Croziers demonstrated "their lack of financial resources" and made a "diligent effort" to obtain counsel, their constitutional claims were "not sufficiently meritorious to warrant the appointment of counsel." *Crozier II*, 2019 WL 249399, at *4.

The Croziers contend that reliance on *Hale* is an abuse of discretion because (1) *Hale* applies only in Title VII cases and is thus "an irrelevant standard," and (2) the court "improperly considered the merits of Plaintiffs' claims instead of the

---

[1]Congress has not materially changed this language since 1948. Pub. L. No. 80-773, § 1915(d), 62 Stat. 869, 955 (1948).

necessity of appointed counsel." They maintain that a district court must limit its analysis to five factors cited in *Patterson v. Kelly*, 902 F.3d 845, 850 (8th Cir. 2018), but they misread the case. *Patterson* does not say that its five factors are exclusive, but that they are "relevant" and "include" (1) the factual complexity of the issues; (2) the ability of the indigent person to investigate the facts; (3) the existence of conflicting testimony; (4) the ability indigent person to present the claims; and (5) the complexity of the legal arguments. *Id.*; *see also Phillips*, 437 F.3d at 794. This court has for years said that these five factors are "by no means an exclusive checklist." *Johnson v. Williams*, 788 F.2d 1319, 1323 (1986); *In re Lane*, 801 F.2d 1040, 1044 (8th Cir. 1986); *Rayes v. Johnson*, 969 F.2d 700, 703 (8th Cir. 1992).

The Croziers' reading ignores that the purpose of applying the factors is to determine whether "the nature of the litigation is such that plaintiff as well as the court will benefit from the assistance of counsel." *Patterson*, 902 F.3d at 850. Other circuits consider a similar purpose when applying comparable factors to determine a *pro se* plaintiff's need for appointed counsel. *See Machadio*, 276 F.3d at 107 ("in determining whether to appoint counsel for an indigent litigant a district court judge should first consider whether the indigent's position seems likely to be of substance, then assess the litigant's competence to proceed pro se, the complexity of the issues," and any other reason why appointment of counsel would be more likely to lead to a just determination); *Rucks v. Boergermann*, 57 F.3d 978, 979 (10th Cir. 1995) ("if the plaintiff has a colorable claim then the district court should consider the nature of the factual issues raised in the claim and the ability of the plaintiff to investigate the crucial facts."); *DesRosiers v. Moran*, 949 F.2d 15, 24 (1st Cir. 1991) ("To determine whether there are exceptional circumstances sufficient to warrant the appointment of counsel, a court must examine the total situation, focusing, *inter alia*, on the merits

of the case, the complexity of the legal issues, and the litigants ability to represent himself.").[2]

We thus conclude that the district court did not err in considering the potential merit of the plaintiffs' claims, along with other relevant factors, in deciding whether to request counsel. If it is possible to discern without adversarial presentations that all claims are likely to be insubstantial, then the court properly may weigh that reality when deciding whether to devote resources to the litigation by requesting an attorney to undertake representation.

## B.

The remaining question is whether the district court properly denied the motion for appointment of counsel under the particular circumstances of this case. We review that decision for abuse of discretion. A district court "has a good deal of discretion to determine whether representation is warranted given the nature of the case and the litigants," *Patterson*, 902 F.3d at 849-50, but the discretion is not unbounded. *See Rayes*, 969 F.2d at 703; *Abdullah v. Gunter*, 949 F.2d 1032, 1036 (8th Cir. 1991); *Johnson*, 788 F.2d at 1323; *Wiggins v. Sargent*, 753 F.2d 663, 668 (8th Cir. 1985); *Peterson v. Nadler*, 452 F.2d 754, 758 (8th Cir. 1971) (per curiam),

---

[2]District courts in this circuit likewise have applied the *Hale* factors in non-Title VII cases, including civil rights cases, along with other factors this court has recognized as relevant to an indigent plaintiff's need for appointed counsel. *See, e.g., Swift v. Barrett*, No. 8:17CV368, 2017 WL 6459432, *4 (D. Neb. Dec. 18, 2017); *Jackson v. Dayton*, No. 15–CV–4429 (WMW/TNL), 2016 WL 11198354, *12 n.10 (D. Minn. Dec. 16, 2016); *Henderson v. Engstrom*, No. CIV 10-4116-RAL, 2011 WL 4896563, *1 (D.S.D. Oct. 14, 2011*)*. *Cf. Andrews v. Nicholson*, No. 05-0870-CV-W-FJG, 2005 WL 2403449, *2 (W.D. Mo. Sept. 28, 2005) (applying *Hale* and additional factors in a Title VII case); *Young v. Hagar-Mace*, No. 4:16–CV–00969–DGK, 2017 WL 2729103, *2 (W.D. Mo. June 23, 2017) (applying the factors in a discriminatory housing practice claim under 42 U.S.C. 3613(b)).

*abrogated on other grounds by Mallard v. U.S. Dist. Ct. for S. Dist. of Iowa*, 490 U.S. 296 (1989).

The district court denied the motion for counsel after concluding that the Croziers were "unlikely to prevail" on their claims, including the core claim that the teacher violated A.C.'s right to freedom of speech by retaliating against her. In support, the district court cited a ruling that it was constitutional to discipline a student for uttering profanity in a principal's office, and decisions declaring that schools and teachers may limit classroom speech based on legitimate pedagogical concerns. The court concluded that "the First Amendment affords little protection to student speech during class time," so the teacher "likely would be entitled to qualified immunity."

The merits of the case have not been briefed and argued, but we think the district court was too quick to dismiss the usefulness of counsel, at least on the core claim of First Amendment retaliation. It is clearly established that "[s]tudents in the public schools 'do not shed their constitutional rights to freedom of speech or expression at the schoolhouse gate.'" *Hazelwood Sch. Dist. v. Kuhlmeier*, 484 U.S. 260, 266 (1988) (quoting *Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503, 506 (1969)). To be sure, schools may exercise editorial control over the style and content of student speech when the public might reasonably perceive the speech to bear the imprimatur of the school, and control is "reasonably related to legitimate pedagogical concerns." *Id*. at 273. But the extent to which teachers may control student speech in the classroom is an open issue. *Compare, e.g.*, *Axson-Flynn v. Johnson*, 356 F.3d 1277, 1289 (10th Cir. 2004) ("Few activities bear a school's 'imprimatur' and 'involve pedagogical interests' more significantly than speech that occurs within a classroom setting as part of a school's curriculum.") (citation omitted), *with C.H. ex rel. Z.H. v. Oliva*, 226 F.3d 198, 213 (3d Cir. 2000) (en banc) (Alito, J., dissenting) ("[N]othing in *Hazelwood* suggests that its standard applies when a student is called upon to express his or her personal views in class or in an

assignment."). And whatever the scope of a teacher's authority to limit classroom discussion, it is clear that students "cannot be punished merely for expressing their personal views on the school premises—whether 'in the cafeteria, or on the playing field, or on the campus during the authorized hours.'" *Hazelwood*, 484 U.S. at 266 (quoting *Tinker*, 393 U.S. at 512-13). *See Papish v. Bd. of Curators of Univ. of Mo.*, 410 U.S. 667, 670-71 (1973) (per curiam).

The allegation here is that a public school teacher retaliated against a student merely for expressing her personal views when called upon to speak in a classroom. The complaint asserts that the teacher defamed the student by falsely labeling her as a racist who uses the "N-word"—an act that the district court understandably did not describe as reasonably related to a legitimate pedagogical concern. A retaliation claim requires proof that the teacher's action would deter "a person of ordinary firmness" from continuing to speak, *see Kesterson v. Kent State Univ.*, 967 F.3d 519 (6th Cir. 2020) (per curiam), but the stress, anxiety, and ostracization arising from a teacher's false attribution of racist utterances to a middle-schooler might fit the bill. The district court did not address whether retaliation by defamation is any more permissible than the "punishment" expressly forbidden by *Tinker*, or otherwise elaborate on why retaliation for classroom speech would be consistent with the First Amendment.

Ordinarily, the denial of a motion to appoint counsel would mean that the plaintiffs may continue to litigate *pro se*, obtain a ruling on the merits from the district court, and exercise their right to appeal. But in the unusual circumstances of this case, the district court's denial of the motion, together with the rule against *pro se* representation by parents, terminated the action before any claim could be adjudicated. The student could proceed on her own when she reaches the age of majority, but that course would entail substantial delay and potential prejudice in pursuing the vindication of her alleged rights. We thus conclude that the district

court's assumption about the likely application of qualified immunity was insufficient on this record to justify denial of the motion for appointment of counsel.

We have only a complaint before us, so we do not know whether the Croziers can prove their factual allegations. Some legal theories in the *pro se* complaint appear stronger than others, and an attorney might assist in winnowing the claims. Having received no briefs on the merits, we express no view on whether any claim ultimately would be successful. But the core allegation of First Amendment retaliation is a serious claim on which the plaintiffs and the court would benefit from the assistance of counsel, especially when the case otherwise cannot proceed to a timely decision on the merits. We expect that some member of the bar, in the tradition of the profession, will respond favorably to a request from the district court.

For these reasons, the judgment is reversed, and the case is remanded with directions to request counsel for the plaintiffs under 28 U.S.C. § 1915(e).

_____