# United States Court of Appeals
## For the Eighth Circuit

_____

No. 23-3579

_____

Gary A. Smith

*Plaintiff - Appellant*

v.

Warden Jeffie Walker, Miller County Detention Center (MCDC); Sergeant Robbie Golden, MCDC; Miller County, Arkansas

*Defendants - Appellees*

_____

Appeal from United States District Court
for the Western District of Arkansas - Texarkana

_____

Submitted: April 17, 2025
Filed: July 31, 2025
[Unpublished]

_____

Before KELLY, ERICKSON, and STRAS, Circuit Judges.

_____

ERICKSON, Circuit Judge.

Gary Smith, acting *pro se*, commenced this action under 42 U.S.C. § 1983. He alleges the Warden of the Miller County Detention Center ("MCDC"), a sergeant corrections supervisor, and Miller County, Arkansas, violated his constitutional rights when they placed him in administrative segregation without due process and

failed to protect him from another detainee with known violent propensities. After seven months of unsuccessful discovery requests, the district court ordered the defendants to produce some of the information Smith had been trying to obtain. During the discovery period, Smith repeatedly sought appointed counsel, but his motions were denied without a reasoned explanation. Eventually, the district court adopted the magistrate judge's report and recommendation with slight modifications and granted summary judgment in favor of all defendants. Smith appeals both the district court's refusal to appoint counsel and the adverse summary judgment decision. Because Smith has shown his claims are not frivolous on their face and he proffered compelling reasons to warrant the appointment of counsel, we find the district court abused its discretion when it denied Smith's motions for appointed counsel without explaining. We reverse and remand for further proceedings.

Smith is currently an inmate of the Texas Department of Criminal Justice. In early April 2021, the then 55-year-old Smith was brought to the MCDC located in Texarkana, Arkansas. He had a history of serious medical issues, including a stroke that partially impaired his ability to walk and use his left arm. Smith, who only finished middle school, was initially confined in a pod designated for detainees over 40 years old.

On April 14, 2021, after complaining of chest pains, Smith was taken to a nearby hospital where he was given morphine. After receiving morphine, Smith staggered and bumped into an escorting officer who sustained a head injury. Smith has consistently claimed his fall was accidental and caused by his medication. MCDC staff didn't see the event the same way and regarded the event as a deliberate assault or escape attempt. Sergeant Robbie Golden, an MCDC corrections supervisor, told Smith that he had "really fucked up." When Sergeant Golden presented Smith at the jail, he told the receiving officer to place Smith in "Max Delta 901, where he'll have no alibi." Max Delta unit is an administrative segregation wing. Sergeant Golden specifically directed Smith to be placed in a cell with Charles Anderson, a detainee charged with raping a minor and known to have an extensive disciplinary record, which included violent assaults and threats while housed at the

MCDC. Smith asked Sergeant Golden to place him in an apparently empty cell next to Anderson's, but Sergeant Golden replied no other cell was available.

Three days later, Anderson assaulted Smith, bound him, beat him to the point of unconsciousness, and raped him. Smith woke up to the voice of a staff nurse outside his cell asking a guard why Smith's feet were tied to his bed. The staff found Smith face down with his feet, neck, and hands tied to the bed and a gag stuffed in his mouth. A medical examination confirmed that Smith had suffered a head injury, facial contusions, broken ribs, and sexual trauma. Ten days later, Smith bonded out of MCDC and was extradited to Texas. Subsequently, Anderson was criminally charged with rape and second-degree battery.

During Smith's incarceration he filed over a dozen motions asking the court to appoint him counsel. In his first motion, Smith explained that he suffered from partial paralysis because of a stroke, he lacked access to a law library due to COVID-19 lockdowns, and he had to rely on other inmates for help because of his medical and educational limitations. He also indicated that he lacked the financial resources necessary to hire counsel on his own and that his ongoing efforts to retain counsel had been futile. The magistrate judge denied the unopposed motion to appoint counsel in a text-only order noting only that the case was not factually or legally complex and that Smith was "adequately prosecuting" his case on his own. The magistrate judge added that Smith "may again request appointment of counsel if [he] believes the circumstances justify such an appointment."

Over the next year, the magistrate judge denied twelve more motions for appointed counsel. While each of the motions was unopposed, the magistrate judge summarily denied each one in a text-only order, stating: "For the reasons stated in the Courts prior Order"—notwithstanding that no meaningful reason had been given in the original order. Tellingly, the motions raised numerous circumstances that had changed since Smith's first motion was filed. For example, Smith had disclosed a second stroke, developed a new heart condition, been transferred to a new facility without his jailhouse lawyer, made numerous failed discovery attempts,

unsuccessfully contacted numerous attorneys to represent him, learned he was suffering from PTSD and depression due to his brutal rape, disclosed his limited reading and writing skills due to a middle school education, and realized he would need a lawyer to depose the witnesses after seeing how difficult the process was when he was deposed. The magistrate judge never bothered to discuss any of the changed circumstances or why they were inadequate to justify appointment of counsel.

Predictably, Smith also struggled to navigate discovery. He filed three motions to compel that generally demonstrated he lacked an understanding of the legal process. The magistrate judge denied the first two motions to compel in text-only orders on the grounds that Smith "failed to show he made any effort to confer with Defendant(s) before filing this Motion to Compel"—without even noting that he had no opportunity to consult because he was incarcerated in a lockdown during the time when the consulting should have taken place. While the magistrate judge later granted, in part, Smith's third motion to compel in December 2022, allowing certain discovery involving security procedures and staff knowledge of his attacker's history, it denied his prior discovery requests without a meaningful explanation.

When the district court eventually reached the merits of his claims, it found there was evidence in the record to create a genuine question on whether Smith was subjected to an objectively serious risk of harm, but that no triable issue of fact existed because the evidence was insufficient to establish Sergeant Golden was deliberately indifferent to the risk Anderson posed to Smith. In reaching those conclusions, the court noted the absence of evidence showing Sergeant Golden had actual knowledge of the substantial risk Anderson posed to Smith's safety, as the only evidence in the record of Sergeant Golden's actual knowledge was Smith's testimony that Sergeant Golden had actual knowledge and defendants' affidavit from a nonparty who lacked personal knowledge of the circumstances. The district court granted summary judgment to the individual defendants, and then dismissed the

official capacity claims against Miller County because they could not survive without an underlying constitutional violation. This appeal followed.

While indigent civil litigants have no constitutional or statutory right to appointed counsel, district courts may appoint counsel after considering, among other factors, the factual and legal complexity of a case, the litigant's ability to investigate and present the claims, and the presence of conflicting evidence. Phillips v. Jasper Cnty. Jail, 437 F.3d 791, 794 (8th Cir. 2006). Additional factors include whether an indigent plaintiff has stated a colorable claim, and whether the court would benefit from assistance of counsel. In re Lane, 801 F.2d 1040, 1043–44 (8th Cir. 1986) (collecting factors and rejecting any *per se* rules to limit a district court's discretion to appoint counsel). "In ruling on a request for counsel, the district court must exercise 'a reasoned and well-informed discretion' and seriously consider appointing counsel 'whenever an indigent plaintiff establishes in his or her pleadings a prima facie case which, if proven, would entitle him or her to relief.'" Brown v. Frey, 806 F.2d 801, 804 (8th Cir. 1986) (citation omitted).

Here, in Smith's motions for appointed counsel, he explained the special circumstances that justified his request. He detailed his middle school education; his physical difficulties with writing, typing, and walking due to multiple strokes; his postconviction heart failure, PTSD, and depression; his need to rely on other inmates for legal work due to his limitations; his lack of meaningful access to a law library due to prison transfers and being held in a medical unit; and his inability to conduct the factual investigation to develop the minimal evidence necessary to proceed with his claims, including discovery requests and depositions of the parties involved.

Smith's claims on their face are not frivolous. But to effectively prosecute them, he needed to obtain information in the exclusive possession of MCDC. This evidence included information that would show what Sergeant Golden, or other MCDC staff members, knew about Anderson's violent history prior to placing Smith in administrative segregation with Anderson. Acting without counsel, Smith

struggled to develop the record regarding the personal involvement of each official involved in the alleged deprivations. This was not due to a lack of effort on Smith's part. Despite Smith's numerous attempts at full discovery, the individual defendants involved with placing Smith in segregation with Anderson have not been deposed, nor have they refuted Smith's allegations with any evidence. Notably, the district court recognized that the defendants did not address Smith's claim of being improperly placed in administrative segregation, but it nonetheless accepted the magistrate judge's finding that there was no evidence Smith was segregated for any reason other than the desire to protect staff or other detainees. Without ever explaining Smith's contrary claim that Sergeant Golden's contemporaneous statements were indicative of an intent to punish, the court instead concluded Smith's inability to provide evidence was fatal to his claims.

A close review of the record and the course of litigation reveals that the evidence necessary to develop the factual record and resolve credibility issues was beyond Smith's ability to obtain without the assistance of counsel and he repeatedly told the district court that he lacked the ability to conduct the necessary discovery. Nonetheless, the court denied these repeated requests without explanation and then dismissed the case for failing to appropriately marshal the evidence—all in the face of a *pro se* inmate plaintiff with serious institutional, physical, and cognitive limitations and no realistic ability to conduct meaningful discovery. While Smith's filings demonstrated a rudimentary understanding of some basic legal principles, his repeated attempts to conduct discovery were hindered, and without the assistance of counsel were doomed to catastrophically fail.

While we recognize the district court's broad discretion to decide whether the plaintiff or the court would benefit from the appointment of counsel, the court's rote denials here failed to consider the special circumstances that Smith presented. Smith's nonfrivolous claims were undeveloped because Smith was deprived of a meaningful opportunity to conduct discovery, which rendered a summary judgment dismissal based on a failure to develop the record virtually unavoidable in a case that must ultimately turn on the credibility of the witnesses. We have previously

concluded that when a nonfrivolous claim has been presented to the court, counsel ought to be appointed if there is a question of witness credibility, see Johnson v. Williams, 788 F.2d 1319, 1323 (8th Cir. 1986), or if a *pro se* plaintiff has demonstrated lack of ready access to a law library and difficulty obtaining and presenting admissible evidence, see Rayes v. Johnson, 969 F.2d 700, 703–04 (8th Cir. 1992). Instead of addressing any of the changed circumstances that pointed to the case being a credibility case that was being hampered by Smith's significant limitations, the magistrate judge repeatedly rendered denials of at least a dozen motions with conclusory orders that show no indication that the motions had been considered in any meaningful way. A court does not "exercise[] a reasoned and well-informed discretion" when it applies a boilerplate rationale without considering material changes in an indigent plaintiff's circumstances. See Nelson v. Shuffman, 476 F.3d 635, 636 (8th Cir. 2007) (per curiam) (quoting Slaughter v. City of Maplewood, 731 F.2d 587, 589 (8th Cir. 1984)); Brown, 806 F.2d at 804–05.

For the foregoing reasons, we conclude the district court abused its discretion when it declined to appoint counsel without explaining its reasoning and then cited Smith's failure to provide sufficient evidence, which was in the defendants' exclusive possession, as a basis for granting summary judgment in favor of the defendants. We reverse the district court's decision denying the appointment of counsel, vacate the grant of summary judgment, and remand with instructions that counsel be appointed to represent Smith and that discovery be reopened.

STRAS, Circuit Judge, dissenting.

I respectfully dissent from the judgment and the court's conclusion on both issues.

_____